WESTBROOK GRAIN & COMMISSION CO. *v.* RICE.

Opinion delivered October 23, 1916.

1. PRINCIPAL AND AGENT—AGREEMENT AS TO SALARY—CHANGE IN DUTIES—PRESUMPTION.—Where appellee was employed by appellant at a definite salary, in the absence of any further agreement in regard to salary, although appellee's place of employment was changed and additional duties placed upon him, it will be presumed that he continued his employment at the original salary.

2. PRINCIPAL AND AGENT—CHANGE OF AGENT'S DUTIES—SALARY.—In the absence of an express agreement, a change or addition in the duties of an agent or employee, will not require the employer to pay the employee an increased salary.

Appeal from Jefferson Chancery Court; *J. M. Elliott*, Chancellor; reversed and dismissed.

*Crawford & Hooker*, for appellant.

The courts will not make contracts for parties who are *sui generis* and on an equal footing. Before the court could have been justified in fixing appellee's compensation on a *quantum meruit* basis proof should have been made, and the burden of proof rested on appellee, that there had been no contract fixing his compensation.

*Nixon & Levine*, for appellee.

Counsel discuss the evidence and conclude that the chancellor was justified in finding that there was no definite salary, nor any basis for determining the salary, agreed upon by the parties, and that the salary fixed by the court upon a *quantum meruit* was supported by the evidence. There is nothing in this case to justify a deviation from the rule that the findings of a chancellor on questions of fact will not be disturbed unless clearly contrary to a preponderance of the evidence.

SMITH, J. Appellee brought this suit to restrain appellant from interfering with the business of the City Feed Company, and alleged in his complaint that he was the owner thereof, having purchased the business from appellant, who, notwithstanding the fact that he had sold the business to appellee, claimed to be the owner thereof and was attempting to oust appellee from its control and management. Before the submission of the cause there was an amendment to the complaint in which appellee prayed, if the court should find that he was not the owner of the business, that additional compensation be allowed him for his services during the time it had been under his management.

Appellant denied appellee's ownership or his right to additional compensation.

Appellee was employed by appellant's father for five years and was employed by appellant himself after he succeeded his father in the control of the business for a period of about two years, and until the time of the

institution of this suit.    The Westbrooks had been engaged in both the wholesale and retail business, which was conducted as a single enterprise, but when appellant succeeded to its management he separated his retail business from his wholesale business, and put appellee in charge of this retail business, which was thereafter conducted under the name of the City Feed Company.    Upon taking charge of this business appellee executed to the order of the Westbrook Grain & Commission Company, which was the name under which the wholesale business had been and was thereafter conducted, a note for $7,900.00.    This note was signed by appellee as manager, and appears to represent the stock of goods on hand and other charge items which the retail business owed the wholesale business. Thereafter, there was a complete severance of the business of the two concerns, and appellee was left in sole charge of the retail business.

The court found there had been no sale of the retail business to appellee, and also found that there was no agreement fixing his salary, and that the fair and reasonable value of his services was $200.00 per month and rendered judgment accordingly, and appellant alone has appealed from this decree.

Prior to being put in charge of the retail business appellee had been paid a salary of $125.00 per month and he gave the following testimony concerning its increase.    "Q.    What salary did you draw there as manager of the City Feed Company?    A.    A salary; I drew $125.00 a month.    Q.    You had been drawing that before as an employee of the Westbrook people, had you not?    A.    Yes, sir.    Q.    And you continued to draw it after you were manager, did you not?    A. Yes, sir.    Q.    You have drawn that up until the time of the filing of this suit?    A.    Yes, sir, I drew $135.00 a month.    Q.    Under an agreement with Mr. Westbrook or just on your own motion?    A.    Yes, sir, on my own motion.    Q.    At the time you purchased this property you think you drew out of the business a hundred and thirty-five dollars a month?    A.    Yes, sir, a hundred

and thirty-five. Q. When he put you in charge of the business in June did he tell you then what he agreed to pay you? A. No, sir. Q. Did he ever in his life, when he put you in charge, or at any other time, ever come to any agreement about how much he would pay you? A. No, sir; he never did; the business went right on after his father's death. Q. Never did have any stipulated price after you took charge, and assumed responsibility of the business? A. No, sir." In other portions of his testimony he stated an increase of salary was promised if the businesses were profitable and the business had proven profitable.

Appellant testified as follows: "Q. At the time that Mr. Rice was drawing $125.00 a month; at the time he took charge of the business; was anything said about an increase in salary? A. Mr. Rice asked me what I thought it would be worth up there, and I told him just continue along like we had been, and if the business justified it, we would be willing to grant him an increase in salary; something was said about that the business would show something like five or six thousand dollars profit a year, and I told him if it did and the figures show up that way, we would be glad to increase his salary. Q. But nothing was definitely decided on? A. Nothing except that he was to continue at the salary he was getting, that was definitely fixed. Q. So, if the business made good, you would give him a raise of salary? A. I said we would discuss the question, if the profits showed an increase of five to six thousand dollars a year."

He denied that the business showed this increase, and stated that there was no other conversation or agreement in regard to any increase in the salary, and that he did not know that appellee was taking credit for any larger amount than $125.00 per month and that appellee's action in crediting himself with $135.00 a month was done without his knowledge or consent.

We think this evidence does not warrant the court's finding. This is not the case of one man entering another's service without any agreement as to com-

pensation. In such a case the court might inquire the value of similar services and award compensation *quantum meruit.* Here appellee had been employed for five years at a definite salary, and in the absence of any agreement in regard to salary the presumption would be that he continued his employment at the same salary notwithstanding he changed his place of employment and assumed some additional duties. Appellee says there was no agreement except as above stated and we think the finding that the prior contract was rescinded and a new one implied is contrary to the preponderance of the evidence. And the fact that appellee may have earned a larger salary and expected to receive a larger salary would not support a recovery therefor unless there was some agreement, either expressed or implied, on appellant's part to pay it.

The decree of the court below is, therefore, reversed and the cause dismissed.