34056. EMPIRE BOX INCORPORATED *v.* MOORE.

DECIDED SEPTEMBER 13, 1952—REHEARING DENIED OCTOBER 17, 1952.

*Powell, Goldstein, Frazer & Murphy,* for plaintiff in error.
*Willingham, Gortatowsky & Morrison,* contra.

WORRILL, J. (After stating the foregoing facts.) In addition to excepting to the judgment overruling all grounds of demurrer to the petition as finally amended on February 18, 1952, the defendant, on February 22, 1952, filed exceptions pendente lite to the overruling of several special demurrers to various paragraphs of the petition before last amended. Although error is assigned thereon, these exceptions pendente lite are functus officio and can not be considered for the following reasons. After the rewritten petition was amended in a material way on February 18, 1952, the entire petition as thus amended was reopened to demurrer. The defendant did, on February 27, 1952, redemur, but did not renew all previous grounds of demurrer, renewing only certain specified grounds and urging an additional general ground of demurrer to each count of the petition as amended. These grounds will be referred to in detail hereinafter. Where a demurrant renews all grounds of demurrer theretofore filed, he is entitled to have all of them passed upon, but where, instead of doing this, he specifies the grounds which he renews, all other grounds are in law abandoned. *Peoples Loan Co.* v. *Allen,* 199 *Ga.* 537, 557 (34 S. E. 2d, 811). The grounds the overruling of which was excepted to pendente lite were grounds of a demurrer filed on

January 29, 1952, and after the petition was amended on February 18, 1952, and the petition thus reopened to demurrer, they were not renewed in the demurrer of February 27, 1952, and are, therefore, in law abandoned and can not be considered. The grounds of demurrer remaining for decision are:

To count 1, generally: (1) No cause of action is set forth. (2) There is no ground for recovery, there being no valid contract in existence between the parties at any time, that upon which the plaintiff relies being unilateral and too indefinite for enforcement. (3) The petition shows on its face that no commissions are due the plaintiff for the periods from July 1, 1949, to June 30, 1950, and from July 1, 1950, to June 30, 1951, since the petition shows on its face that no valid and enforceable contract existed between the parties during that time.

To count 1, specially: To the allegations as to the alleged agreement between the defendant, through its manager S. J. Zusmann, and the plaintiff for his services and the basis of remuneration, on the ground that such allegations are conclusions, the alleged contract not being an enforceable one.

To count 2, generally: (1) and (2). The same as to count 1. (3) No facts are shown which authorize recovery of damages. (4) The petition shows on its face that no valid contract existed between the parties during the period from July 1, 1950, to June 30, 1951.

To count 2, specially: The same as the special ground to allegations in count 1.

One general discussion will afford an answer to all of the grounds of demurrer. The inquiry involves the questions (a) whether or not the petition as amended shows that any legal and binding contract for one year was entered into and (b) if so, whether or not it was capable in law of being tacitly renewed between the parties and (c) whether or not there was in fact such a renewal. It would seem that there should be no doubt that under the allegations of the petition as amended, a contract partly oral and partly written for one year was entered into. It was alleged that on July 8, 1948, the defendant, acting through its manager, and the plaintiff reached an agreement for the employment of the plaintiff by the defendant and the serving of the defendant by the plaintiff for a period of one year, begin-

ning on July 1, 1948, and ending June 30, 1949. It specifies the oral agreements of the parties as the work to be done, and then alleges that the basis of his remuneration was set forth by the defendant in its letter of July 8, 1948, written by the defendant's manager, S. J. Zusmann, a copy of which was set forth in the pleadings, and that a carbon copy thereof was signed by the plaintiff and delivered to the defendant. The letter confirmed the "basis of remuneration" for the period beginning July 1, 1948, and ending June 30, 1949. It provided, among other things, for payment of $126.92 per week during the period of the employment for one year, for refund of expense of traveling on business of the defendant and that "Both the above salary and expense account is paid to you with the understanding that for the like period of one year you will obtain $250,000 worth of billing to your accounts for the company." It is contended by the defendant that the language just quoted fixes a condition of employment, and by the plaintiff that it merely fixes a quota of business. It could not reasonably be treated other than as a quota. If intended as a condition, it could not be effective because it could not be determined until the end of the contract year whether or not the plaintiff had produced such an amount of business, and in the meantime the company would have paid him $126.92 per week throughout the period and where no forfeiture at any time of any part of his salary had been provided for. It is true that the word "understanding" when used in an instrument which is signed by both parties thereto may in some contexts be the equivalent of "agreement." *Bullock* v. *Johnson*, 110 *Ga.* 486, 491 (35 S. E. 703). For example, the use of the words "our understanding" in the letter relied upon as part of the original contract, where used in referring to commissions on billings in the corrugated boxes department, obviously means agreement of the parties, but it is clear that, although the letter was signed by the plaintiff he was not subscribing to any admission that the language, "with the understanding," as related to volume of business was anything more than an expression by the defendant that the plaintiff was being employed and paid the salary named because the defendant understood or expected that he would produce a volume of $250,000 and without providing for any forfeiture of any part of his salary in case he did not.

In any event it is apparent that the defendant, if it originally intended to express a condition of employment, did not insist upon it, because it continued, after the first year, to accept his services and pay him the stipulated salary until he was discharged in the third year of employment. Inferentially, the plaintiff did not produce as a salesman any excess over such a volume, because he did not sue for any commission provided for in that event, a sales effort, but did sue for commissions of ½ of one percent and ¼ of one percent respectively, on volume of business in the corrugated boxes department, to which he lent aid in an executive capacity as provided for in the contract. As negativing any theory that the engagement was one which was terminable at will by the defendant, and showing, on the contrary, a contract for the period of one year, as in fact expressed in the writing, the letter stated that, "The company has the right to cancel this understanding in the event they are apprised of the fact that your connection with the company is found to be detrimental to its endeavors." A contract, partly oral and partly written, for a period of one year is valid and enforceable. Code, § 38-504; *Forsyth Mfg. Co. v. Castlen*, 112 *Ga.* 199, 211 (37 S. E. 485).

The petition further shows that though there was no express agreement for employment after the yearly period ending June 30, 1949, the parties tacitly renewed the contract for employment for the period beginning July 1, 1949, and ending June 30, 1950, and for the period beginning July 1, 1950, and ending June 30, 1951, the plaintiff continuing to perform the same obligations as were required under the first yearly contract and the defendant accepting his services until he was wrongfully discharged on October 6, 1950. Such a contractual relationship may arise in law. "A person who has been previously employed by the year or other fixed interval, and who is permitted to continue in the employment after the period limited by the original employment has expired, 'will, in the absence of anything to show a contrary intention, be presumed to be employed until the close of the current interval, and upon the same terms.' Such a presumed renovation of the contract from the period at which the former expired 'is held to arise from implied consent of the parties, and in consequence of their not having signified their

intention that the agreement should terminate at the period stipulated. . . Whether the first hiring has its duration fixed by express or implied contract, if it be fixed in either way, the term (if not longer than one year) admits of duplication by tacit as well as express agreement.' *Standard Oil Co.* v. *Gilbert,* 84 *Ga.* 714 (11 S. E. 491, 8 L.R.A. 410)." *National Manufacture &c. Corp.* v. *Dekle,* 48 *Ga. App.* 515, 521 (173 S. E. 408). In the opinion cited in the *Dekle* case, *Standard Oil Co.* v. *Gilbert,* the contract for the first year was in writing and was entered into on October 1, 1880. It was expressly renewed for a second year ending October 1, 1882. In seeking to distinguish this case the plaintiff in error calls attention to the fact that the contract for the second year was *expressly* renewed. This assertion is, of course, true, but the basis for the holding of renewal by tacit agreement is not the express renewal for the second year, but the fact that though no negotiations took place after the second year the parties continued to deal with each other in harmony with the express agreement until December 5, 1886, when the defendant gave the plaintiff notice that, for reasons stated, the arrangements under which they had dealt with each other would not be continued. Reputable authorities were examined and approved in an opinion written by Chief Justice Bleckley in the *Gilbert* case, supra, from which Judge Jenkins quoted in the *Dekle* case, supra. See also *Jackson* v. *Doolittle,* 21 *Ga. App.* 483 (94 S. E. 595); 35 Am. Jur. 454, § 15; Id. 460, § 23; 1 Williston on Contracts (Rev. ed.) 255, § 90. In the present case there was not one contract, partly oral, for a period of more than one year. There were three contracts separately entered into. The plaintiff is not suing on one contract extending through the entire period of his employment. In count 1 he is suing for the total of commissions due under the three contracts to October 6, 1950, the date of his discharge, $3474.87 less $500 which he alleged was paid him on the commission account on July 20, 1949, a total of $2974.87. In count 2 he is suing for damages for breach of contract, based on commission of ½ of one percent on $625,018.31, the amount of billings from October 1, 1950, to June 30, 1951, $3125.09, and his salary for the same period, $4569.12, less $2142.65 which he was able to earn elsewhere after his discharge, $2426.49, a total of $5551.56. The

suit is not subject to the objection that it is based on one contract which was partly oral and for more than one year and unenforceable as being within the statute of frauds. See in this connection *Craig* v. *Baggs,* 64 *Ga. App.* 850, 857 (14 S. E. 2d, 156).

In each count the petition as amended set forth a valid, definite and binding contract for each of the three periods of one year as mentioned, and all of the grounds of demurrer are without merit for the reasons above stated.

It is urged that the payment by the defendant of $500 to the plaintiff on July 20, 1949, within the second year period, and no insistence by the plaintiff for more at that time should be regarded as conclusively negativing any theory that the plaintiff was then performing services under any such contract as he now seeks to set forth. The failure to complain in any manner at that time does not, however, bar the plaintiff from asserting the contracts, the presumption being, in the absence of a showing of contrary intent at the time of the payment of the $500, that it was simply on account. Dill *v.* Kucharsky, 212 Minn. 276 (3 N. W. 2d, 585). Furthermore, it is specifically alleged in the petition that the payment was on the commission account.

*Judgment affirmed. Sutton, C.J., and Felton, J., concur.*