BRANDENBURG *v.* S. F. & G. COMPANY, INC.

[No. 172, October Term, 1954.]

*Decided June 13, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Ross G. Porter* for the appellant.

*George T. Burroughs* and *Martin R. Fain* for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from a judgment entered in favor of the appellee, defendant, as the result of an instructed verdict granted at the end of the appellant's, plaintiff's, case.

On April 12, 1954, the plaintiff, Claude F. Brandenburg, filed a declaration in assumpsit against the defendant, S. F. & G. Company, Inc., alleging that he had performed work for the defendant in superintending carpentry work and general supervision of construction of apartments, that he had not been paid for his work, and asking damages therefor.

After demand, a bill of particulars was filed by the plaintiff stating that he had entered into an oral agreement with the defendant to perform and supervise work on Sections A, B and C of defendant's apartment construction at a salary of $150.00 per week, plus a bonus of $10.00 for each apartment unit completed. He was in fact paid by the defendant $150.00 per week and $10.00 as bonus for each of the 250 apartment units in Sections A, B and C. Before Sections A, B and C were completed the defendant, through its agents, assigned the plaintiff the same duties on Sections D, E, F and G of the whole project and continued to pay plaintiff $150.00 per week. The construction of Sections A, B, C, D, E, F and G was continuous and uninterrupted and work on the new sections was begun before earlier

sections were completed. Plaintiff supervised the work of the complete development from the time he first orally contracted to do the work about June, 1950, until all the units were completed and occupied in June, 1952. At no time was he informed by the agents and officers of the defendant that he would not be paid the $10.00 bonus on each apartment in additon to the salary of $150.00 per week. It was understood by him that as the new work on Sections D, E, F and G was assigned to him he was to be paid for such new work at the same rate he was paid for Sections A, B and C, that is, $150.00 per week, plus a bonus of $10.00 for each apartment unit completed in Sections D, E, F and G. Neither the defendant nor anyone acting in its behalf complained of the work done by the plaintiff and his work was accepted as fully performed. Six hundred and fifty-five apartments were completed in Section D, E, F and G for which the plaintiff is entitled to $6,550.00 or $10.00 for each apartment completed. After the apartments were completed in Sections D, E, F and G he demanded the bonus of $6,550.00 from the agents and officers of the defendant and they refused to pay the said bonus. After the construction was completed on all the apartments the agents of the defendant hired the plaintiff to generally supervise the maintenance and care of the apartment development at a salary of $150.00 per week. Plaintiff and the agents and officers of defendant mutually agreed orally that, if either party was dissatisfied with the other, they would give thirty days notice to terminate the agreement. When the plaintiff demanded his bonus of $6,550.00 on Sections D, E, F and G from the agents of defendant on or about February 15, 1954, they refused to pay the bonus to him and he, thereupon, gave defendant thirty days notice that he was quitting. The agents of defendant, thereupon, told him that he had had no vacation since he started work. Therefore, he could stop work at that time and they would pay him his regular salary through the end of March, 1954, at the rate of $150.00 per week.

At the trial of the case plaintiff testified in part that he entered into a written contract with the defendant about May, 1949, to do carpentry work on Sections A and B. Subsequent to the execution of that contract about June, 1950, the former carpentry contract was cancelled by all the parties and an oral agreement was entered into between the parties by which plaintiff was to be paid $150.00 per week, plus a bonus of $10.00 per apartment, and five percent of all he saved defendant on 250 apartment units in Section A, B and C. This agreement will be referred to herein as the June, 1950, agreement. The plaintiff proceeded under that oral agreement and was paid $150.00 per week for his work on Sections A, B and C. After Sections D, E, F and G were started plaintiff requested and was paid $2,500.00 representing $10.00 per apartment for Section A, B. and C of the project. Before Sections A, B and C were completed work was started on Sections D, E, F and G and the agents of defendant assigned the plaintiff to work on the new sections of the project and continued to pay him $150.00 per week. At one time in his testimony plaintiff stated that there was never any other agreement made after that of June, 1950. He further stated that after work was started on Sections D, E, F and G he moved into one of the apartments and was told that he would not be charged any rent for it, as they wanted him there from 45 to 50 hours a week "most Saturdays, either half a day or all day I would put in." He later testified that for the 655 apartments in Sections D, E, F and G it was "their agreement" that he was to receive a bonus of $10.00 per apartment. Although Sections D, E. F and G were completed in 1952, he did not ask for his bonus of $6,550:00 until February, 1954, as he had not needed the money before that time, but when he made the demand, he needed the money in a lump sum to go back into business. He again testified that there was no agreement other than the agreement of June, 1950. He took it for granted that he was to get the same bonus for Sections D, E, F and G. There was

never any change in the agreement after it was originally made. After testimony was offered by the plaintiff, in colloquy with the trial judge, the following was said: "The Court: No, he [Claude F. Brandenburg] says very definitely, that his agreement was to A, B and C, that he never had any understanding about D, E, F, and G, never talked to the boys. Mr. Porter: [attorney for plaintiff] We concede that point."

The defendant moved for a directed verdict claiming that plaintiff had offered no evidence to establish a contract that he was to be paid by the defendant $10.00 for each apartment constructed in Sections D, E, F and G. The trial judge, finding that there was nothing to establish "a new or an extension of that agreemnt on D, E, F and G," directed a verdict for the defendant and entered a judgment for costs. From that judgment appellant appeals.

Assuming, without deciding, that there was no agreement other than that of June, 1950, by which the appellee agreed to pay the appellant the sum of $150.00 per week and the $10.00 bonus for each apartment completed in Sections A, B and C, and without any further reference to pay, the appellant was instructed to continue the same work on Sections D, E, F and G, and he performed said work, and there was no denial of these facts, we are of opinion that there was sufficient evidence from which the jury could have found that the same agreement applied to Sections D, E, F and G and that appellant was to recieve the same pay.

It is said in 1 *Williston, Contracts,* Rev. Ed., Sec. 90: "Where a contract of employment for a definite time is made and the employee's services are continued after the expiration of the time, without objection, the inference is that the parties have assented to another contract for a term of the same length with the same salary and conditions of service, following the analogy of a similar rule in regard to leases." In *Hollister v. Friedler,* (1952), 18 N. J. Super. 171, 86 A. 2d 809, 811, the following statement is made: "As a general rule, where

one is employed for a definite period and continues in the employment after the expiration of that period without a new express contract, it is presumed that the employment is continued on the terms of the original contract." To the same effect see *Art Wire Stamping Co. v. Johnson*, 141 N. J. Eq. 101, 56 A. 2d 11, (Ch. 1947), affirmed 142 N. J. Eq. 723, 61 A. 2d 240, (1948) ; *Meyers v. Wells*, (1948), 252 Wis. 352, 31 N. W. 2d 512, 515; *Brightson v. H. B. Claflin Co.*, 180 N. Y. 76, 72 N. E. 920, 921; *Adams v. Fitzpatrick*, 125 N Y. 124, 26 N. E. 143; *Empire Box, Inc. v. Moore*, (1952), 87 Ga. App. 57, 73 S. E. 2d 63, 69, where the original contract, partly oral and partly written, specified a weekly salary and commission as compensation; *Holton v. Hart Mill Co.*, (1946), 24 Wash. 2d 493, 166 P. 2d 186, 187. In *Fairchild v. Fairchild Clay Products Co.*, 141 Neb. 356, 3 N. W. 2d 581, 583, it was also held that because an employee refrained from taking his full salary from month to month, without any intention on his part to waive the balance, he was not estopped from demanding the balance of his unpaid salary. In *Patent & Licensing Corp. v. Olsen*, C. C. A. 2, (1951), 188 F. 2d 522, 524, it was said by Judge Augustus N. Hand: "It is true that an inference arises from employment continued beyond the terms of contract that is on the same terms as set forth in the contract, *Adams v. Fitzpatrick*, 125 N. Y. 124, 26 N. E. 143, but this is the case only to the extent that there is nothing in the contract to negative such an inference. Such is not the situation here." In *Martin v. Campanaro*, C. C. A. 2, (1946), 156 F. 2d 127, 129, *cert.* denied 329 U. S. 759, 67 S. Ct. 112, 91 L. Ed. 654, it was said: "When an agreement expires by its terms, if, without more, the parties continue to perform as theretofore, an implication arises that they have mutually assented to a new contract containing the same provisions as the old. Ordinarily, the existence of such a new contract is determined by the 'objective' test, *i. e.* whether a reasonable man would think the parties intended to make such a new binding agreement—whether they acted as if they so intended."

In *McCullough Iron Co. v. Carpenter,* 67 Md. 554, 559, 560, 11 A. 176, it was said: "The case of *Beeston v. Collyer,* 4 Bing. 309, distinctly decides that if the contract for a year is made, and the parties do not disagree, and the service continues, the same contract prevails for the next year during which service has continued, without a new agreement. This is admitted to be the law in England, but it is urged is not the accepted law in this country. We do not think this contention sustained by the authorities. Mr. Wood in his work on Master and Servant, sec. 96, says, when the contract for a year is not expressly renewed, and the service continues in the same business, the presumption is the contract was continued. This is an American authority of high repute, and he cites numerous American decisions in support of the law announced in the text. In *N. H. Iron Factory Co. v. Richardson,* 5 N. H. 294, such contract is likened to the case of a tenant holding over. In *Wallace v. Floyd,* 29 Pa. St. 184, the court says, the presumption is, when the service continues it is under the same contract. The same principle is maintained in *Rauck v. Allbright,* 36 Pa. St. 367; *Nicholson v. Patchin,* 5 Cal. 474; *Huntingdon v. Claffin,* 38 N. Y. 182, and in *Vail v. Jersey Little Falls Manf. Co.,* 32 Barb. (N. Y.) 564. Being only a presumption it is liable to rebuttal by evidence of a change of contract."

In *Travelers' Ins. Co. v. Parker,* 92 Md. 22, 47 A. 1042, Travelers entered into an agreement to pay Parker certain commissions and an additional bonus on policies secured by him between December 1, 1892, and December 1, 1893. There was no further express contract between the parties. Parker alleged that he continued in the services of Travelers uninterruptedly from December 1, 1892, to October 1, 1896, without any change of contract and that by implication of law the original contract had been extended or renewed from year to year so as to cover the period between December 1, 1895, and October 1, 1896, all services rendered prior to December 1, 1895, having been paid in full. Travelers contended

that there was no evidence legally sufficient to entitle the jury to find that the parties to the contract ever agreed to extend it over the period from December 1, 1895, to October 1, 1896. In holding that there was sufficient evidence to submit the case to the jury, this Court quoted the quotation from *Beeston v. Collyer, supra,* in *McCullough Iron Co. v. Carpenter, supra,* and said: "The principle upon which the plaintiff's claim is founded has been recognized in this State in *McCullough Iron Co. v. Carpenter,* 67 Md. 584, and in *Lister Ag. Works v. Pender,* 74 Md. 15. * * * Mr. Wood, in his work on *Master and Servant,* sec. 96, says this is the law of this country, as well as of England, and the Courts of a number of the States have so declared, among which are New York, Pennsylvania, Illinois, Michigan and California. We do not understand the appellant to dispute the law announced in the cases relied on by the appellee, but, he says, that in all these cases, the fact that the plaintiff continued in the employ of the defendant, after the expiration of the period covered by the original contract, was conceded, the only question being whether thereafter the employment was at will, or was a renewal of the original employment for a like period, whereas, here he contends that the very point at issue is whether, after the expiration of the original contract, the services rendered by Parker were rendered to the company or to its agents, Shuff and Thomas, successively, in their respective individual capacities, and this constitutes his second point. * * * Thirdly, the appellant contends that there is no evidence legally sufficient to entitle the jury to find that the parties to the contract ever agreed to extend it over the period from December 1, 1895, to October 1, 1896. It is very true that there is no express agreement to this effect, but there is, we think, an abundance of evidence in the record to require the submission of the case to the jury as was done. The jury must determine the credibility of testimony, and if the evidence offered by the plaintiff is such, that if believed by the jury, they may lawfully find for the plaintiff, the case

cannot be withdrawn from their consideration, although the plaintiff's evidence is contradicted in material particulars by that of the defendant. *West. Md. R. R. Co. v. Kehoe,* 86 Md. 43."

We must conclude from the authorities above cited that, even assuming that there was no agreement other than that of June, 1950, by which the appellee agreed to pay the appellant the sum of $150.00 per week and $10.00 bonus for each apartment completed in Sections A, B and C, and without any further reference to pay, the appellant was instructed to continue the same work on Sections D, E, F and G and performed such work, the burden was on the appellee to show that it was not the intention of the parties that the plaintiff should receive the bonus. This presumption is, of course, rebuttable by evidence of a change of contract. The judgment will be reversed.

*Judgment reversed, with costs, and case remanded for further proceedings.*