467 A.2d 187

**Theodore N. LERNER**

v.

**H. Max AMMERMAN et al.**

**No. 1811, Sept. Term, 1982.**

Court of Special Appeals of Maryland.

Nov. 2, 1983.

136

Burton A. Schwalb, with whom were Jerome Nelson, Laura A. Kumin, Schwalb, Donnenfeld, Bray & Silbert, Washington, D.C., Albert D. Brault and Brault, Graham, Scott & Brault, Rockville, on brief, for appellant.

William W. Cahill, Jr. and Judith D. O'Neill, with whom were J. Calvin Jenkins, Jr., William K. Meyer and Weinberg & Green, Baltimore, on brief, for appellees.

Argued before GILBERT, C.J., and LOWE and LISS, JJ.

LISS, Judge.

This is an appeal by Theodore N. Lerner, appellant, from a summary judgment entered against him in the Circuit Court for Montgomery County in favor of H. Max Ammerman, Homer Gudelsky and Simon Sherman, the appellees herein. The case also includes a cross-appeal by the appellees from a determination by the trial court that the partnership and voting status of Homer Gudelsky, one of the parties to the case, was not an appropriate matter for determination by summary judgment in this proceeding.

The case began when appellant, on April 13, 1982, filed a bill of complaint in the Montgomery County Circuit Court against the appellees.

Lerner and appellees are all partners in the Wheaton Plaza Regional Shopping Center Partnership (the Partnership), which owns and operates the shopping center located in Montgomery County known as "Wheaton Plaza." In addition to his interest in Wheaton Plaza. Lerner owns and operates White Flint Mall ("White Flint"), a large shopping complex located less than three miles from Wheaton Plaza, in which the Wheaton Plaza partners do not have an inter-

est. Lerner also owns and controls the Lerner Corporation, which manages White Flint and managed Wheaton Plaza from October 1, 1974 to June 22, 1982.

Lerner Corporation had maintained its principal office at Wheaton Plaza until sometime early in 1982 when Lerner made known to the partners his intention to move the principal office of Lerner Corporation to White Flint.

In May of 1959 the partners adopted an amendment to the original partnership agreement entered into by the partners on January 6, 1955. The amendment concerned the voting rights of the partners and provided as follows:

All decisions in the management and policies of the partnership business and any disputes and differences pertaining to the partnership business which may arise among the partners shall be decided, unless otherwise expressly provided in this Agreement, by vote of the majority in interest of the original partners. By the term "majority in interest" is meant such group of partners, the total combined partnership interests of which exceeds fifty per cent (50%). The term "original partners", as used in this Agreement, shall mean the partners who are parties hereto and their survivors in the partnership, but shall not include partners who succeed to shares in the partnership as legatees or distributees of a deceased partner as hereinafter provided. (Paragraph 9 of partnership agreement as amended)

The Partnership, on March 17, 1976, entered into an agreement with Lerner Corporation by the terms of which it agreed to employ Lerner Corporation as the manager of the Wheaton Plaza Shopping Center for a five-year period accounting retroactively from October 1, 1974. At the expiration of the five-year period no new written agreement was entered into between the parties but Lerner Corporation continued to perform identical services as required by the written contract and to receive the identical compensation. In recognition of the possible conflict of interest inherent between and among Wheaton Plaza, White Flint and Lerner

Corporation, one of the provisions of the management agreement provided:

> This Memorandum shall continue for a period of five (5) years from the effective date hereof except that either Lerner Corporation or the Owners (other than the affiliates of Lerner Corporation; it being agreed that such Owners (i.e., the affiliates of Lerner Corporation) shall have no vote with respect to such right to terminate) may terminate this Agreement upon at least one (1) year's prior written notice to the other party. Nine (9) months' prior written notice shall be sufficient if Lerner Corporation shall remove its principal business office from Wheaton Plaza Shopping Center during the term before.

When Lerner advised Wheaton Plaza of his intention to move the office of the Lerner Corporation to White Flint, a meeting of the voting partners was called for March 10, 1982. The partners who attended and their interests in the Partnership on that date were:

27%—Estate of Isadore Gudelsky

27%—Estate of Harry Gudelsky

27%—Homer Gudelsky *or* Gudelsky Brothers, a partnership

11%—Theodore N. Lerner

5%—Simon Sherman

3%—H. Max Ammerman

At the meeting of the partners a motion was made to terminate the services of Lerner Corporation as manager of Wheaton Plaza Shopping Center as of June 22, 1982. Ammerman, Sherman and Gudelsky voted in the affirmative and Lerner voted in the negative.[1] The motion was declared

---

1. The 27% interests of each of the estates of Isadore and Homer Gudelsky were precluded from voting on the motion to terminate Lerner Corporation's services. Lerner's right to vote was challenged on the basis of the provision in the original management agreement. Harry Gudelsky's vote was challenged on the ground that while he was an original partner he had assigned his interest to an entity known as Gudelsky Brothers.

carried. This case resulted from this alleged illegal action of the Partnership.

In his complaint Lerner alleged: (1) that the appellees' termination of the management agency with his personally controlled Lerner Corporation was a breach of their fiduciary duty to him; and (2) that the termination vote was improperly tallied because appellee Homer Gudelsky was not entitled to vote as a partner, his partnership share having been allegedly transferred to another partnership, Gudelsky Bros.

The partners responded with a motion for summary judgment pursuant to Rule 610 of the Maryland Rules, contending that there was no genuine dispute as to any material fact and that, as a matter of law, they were entitled to judgment on three grounds: (1) that no fiduciary duty was breached in terminating the management agency; (2) that Gudelsky's entitlement to vote as a partner was irrelevant because Lerner himself, by the terms of the agreement between the parties, was barred from voting on termination and that the votes of Sherman and Ammerman constituted a majority in favor of termination; and (3) that Lerner's dispute as to Homer Gudelsky's status as a partner was not a genuine dispute of a material fact. The lower court, on October 11, 1982, granted appellees' motion for summary judgment, holding that there was no breach of fiduciary duty in terminating the management agency, that Lerner was disqualified from voting on the termination of the management agency, and that the votes of Sherman and Ammerman constituted a majority for termination. The court found that summary judgment was inappropriate on the question of whether Homer Gudelsky continues to be a partner in the Partnership.

On November 4, 1982, Lerner moved for reconsideration and to vacate the court's October 11 order. This motion was denied on November 8, 1982. Timely appeals were noted from the original summary judgment and the denial of the motion for reconsideration. A timely cross-appeal was filed by the appellees from the trial court's refusal to grant

summary judgment on the partnership status of Homer Gudelsky.

We shall initially consider the issues raised by the appellant in this controversy. They are:

I. Was the trial court correct in holding as a matter of law that there was no genuine dispute as to valid termination of the employment of the Lerner-controlled management corporation?

II. Was the trial court correct in holding as a matter of law that any fiduciary duty owed to Lerner by the Partnership was not breached by termination of the management corporation's employment?

We shall then consider the issue raised by H. Max Ammerman in his cross-appeal:

III. Did the trial court err in refusing to grant summary judgment as to the right of Homer Gudelsky to vote to terminate Lerner's management contract?

## I.

There is no dispute between the parties as to the facts of this case. We have stated them as both parties have essentially agreed they existed at the time of the termination of Lerner Corporation's management of Wheaton Plaza Shopping Center. We agree with appellees that the legal presumption mandated by these undisputed facts is that the terms and conditions of the agreement, including the provision prohibiting Lerner from voting on the question of termination continued beyond the formal expiration of the agreement. *See Brandenburg v. S.F. & G. Co.,* 207 Md. 413, 114 A.2d 604 (1955); *Lister's Agricultural Chemical Works v. Pender,* 74 Md. 15, 21 A. 686 (1891); *McCullough Iron Co. v. Carpenter,* 67 Md. 554, 11 A. 176 (1887). All terms of the agreement were presumed to continue unless their nature made them inapplicable to the period beyond the original term. *Art Wire and Stamping Co. v. Johnson,* 141 N.J.Eq. 101, 56 A.2d 11 (1947), *aff'd,* 142 N.J.Eq. 723, 61 A.2d 240 (1948). The presumption of continuance could be overcome only by a contrary provision in the agreement itself or an

affirmative showing that the parties intended to change the terms of the continuing agreement. *McCullough Iron Co., supra* 67 Md. at 560, 11 A. 176; *Empire Box, Inc. v. Moore,* 87 Ga.App. 57, 73 S.E.2d 63 (1952).

Judge John McAuliffe, the trial judge, in granting appellees' summary judgment, said:

> It is undisputed that Lerner Corporation continued to provide management services after the expiration of the five-year term, and the partnership continued to reimburse Lerner Corporation at the rate fixed by the contract. Under these circumstances, there was an employment terminable at will and there arises a presumption that the terms and conditions of the original contract continue except as they may be inconsistent with an employment terminable at will. . . . This presumption may be rebutted, but there is no suggestion in any affidavit filed by or on behalf of the Plaintiff that the parties ever agreed to delete or modify the voting disqualification provision. This is not a case where additional evidence on this point favorable to Lerner might be uncovered through discovery or at trial. Rather, if there had been speech or conduct which could have the effect of modifying the disqualification provision, Lerner would know of it and could set it forth in an affidavit or deposition. He has not done so.[2]

The only deviation from the terms of the agreement was that the Wheaton Plaza partnership gave three months' notice of termination of employment rather than the nine or twelve-month notice which may have been required by the terms of the agreement and its aftermath. The notice as

---

**2.** Judge McAuliffe footnoted that an argument exists that the continued agency was year-to-year. Other jurisdictions differ on this point and it is apparently unsettled under Maryland law. *Compare Smith v. Shallcross,* 165 Pa.Super. 472, 475–76, 69 A.2d 156, 158 (1949) (initial term) *with Hollister v. Fiedler,* 18 N.J.Super. 171, 174, 86 A.2d 809, 811 (year-to-year), *rev'd on other grounds,* 22 N.J.Super. 439, 92 A.2d 52 (1952). This issue is irrelevant to the instant case, as any cause of action for early termination reposes in the Lerner Corporation, which is not a party to this case.

given may possibly give rise to a right to Lerner Corporation for damages arising out of a breach of contract but we are not required to consider that matter as the Lerner Corporation is not a party to this case and the issue was not before the court below nor is it before us.

Moreover, a change in any of the terms of the agreement does not necessarily destroy the presumption that the agreement's remaining terms continued. *See Art Wire and Stamping Co. v. Johnson,* 7 N.J.Super. 173, 72 A.2d 523 (1950), where it was held that a change of notice provision and salary paid did not invalidate presumption that remaining contract terms continued. *Accord, Henkel v. J.J. Henkel Co.,* 212 Cal. 288, 298 P. 28 (1931); *Stewart Dry Goods Co. v. Hutchinson,* 177 Ky. 757, 198 S.W. 17 (1917); *Westbrook Grain & Commission Co. v. Rice,* 125 Ark. 503, 189 S.W. 39 (1916).

The expiration of the management agreement on September 30, 1979, and the continuation of the Lerner Corporation as management and leasing agent for the same compensation and performing the same duties give rise to the presumption that all of the terms and conditions of the original management contract remained in effect, including the restriction on appellant's right to vote on the termination of Lerner Corporation's services to Wheaton Plaza Shopping Center.

The presumption we have noted is, of course, rebuttable but there is nothing in the affidavits filed by or on behalf of the appellant to establish that the parties ever discussed or agreed to delete or modify the voting disqualification provision in their contract. The purpose of this provision in the agreement restricting Lerner's right to vote on a termination of the management agency was obviously to address Lerner's conflict of interest. It is not disputed that at the time of the agreement's expiration as well as at the time of the termination of Lerner's management the identical conflict of interest continued.

 In order to avoid the entry of summary judgment against him, on the issue of the restriction on his right to vote on termination of Lerner Corporation's management contract, Lerner was required to demonstrate, with facts admissible into evidence, that there was a genuine dispute as to this legal presumption. *Brown v. Suburban Cadillac, Inc.,* 260 Md. 251, 272 A.2d 42 (1971). A mere "naked assertion that there is a dispute between the parties as to the facts of the matter" is insufficient "to raise such issue and ineffectual to prevent a summary judgment." *Guerassio v. American Bankers Corp.,* 236 Md. 500, 204 A.2d 568, 570 (1964). It is not sufficient merely to enter a general denial of the existence of a contract between the parties without the introduction by affidavit of such admissible facts as would establish that a genuine dispute exists. *Shatzer v. Kenilworth Warehouses, Inc.,* 261 Md. 88, 274 A.2d 95 (1971). Not only did appellant fail to offer any evidence to rebut the presumption in this case, but in a contemporaneous companion case, *Ammerman, et al. v. Lerner, et al.* (Montgomery County Circuit Court Equity # 80,241), appellant testified that the Wheaton Plaza Shopping Center's minutes contain the following reference to the continuation of the agreement's terms and conditions:

Q [Lerner's counsel]: Would you read paragraph 5?

A [Lerner]: "Lerner Enterprises Management agreement; Tysons and Wheaton, expires this year. Once [sic, Wants] renewal, five years. Two and a quarter, Wheaton, two and a half, Tysons, same terms except termination right because Lerner Enterprises is moving office. This because Lerner Enterprises is planning to move office building adjacent to White Flint within a year. Also wants other terms in right removed because wants certainty of five-year term due to amortize a new computer system being acquired, mostly for shopping centers."

. . . .

Q [counsel for partners]: Mr. Lerner, that proposition to extend the contract and remove the right to terminate

within nine months on moving, et cetera, the partners voted down, didn't they?

A Yes.

We agree with the trial court in its conclusion that the appellant was prohibited from voting on the question of the termination of the Lerner Corporation's management agency contract with Wheaton Plaza Shopping Center and that appellant failed to establish that there was a genuine dispute of fact or of law which would prohibit the trial court from granting the summary judgment which it granted to appellee.

## II.

Lerner contends that even if he were not entitled to vote on the question of termination of Lerner Corporation's management contract, he was entitled to relief in this case because of a breach of fiduciary duty owed to him by his partners. He argues that the termination of a successful and beneficial relationship between the Wheaton partnership and Lerner's experienced management corporation, and the substitution of an unknown management agency amounted to a breach of the fiduciary duty owed to him by the partnership.[3] He contends that the selection of an unqualified management employee threatens harm to his multimillion dollar investment in Wheaton Plaza.

Lerner commenced the action below for injunctive relief while his corporation was still acting as the managing agent for Wheaton Plaza. No present harm to Lerner's partnership interest was alleged in his complaint, nor was any evidence offered as to any future harm which might occur. *See, e.g., Hamilton Corp. v. Julian,* 130 Md. 597, 101 A. 558 (1917). Actual loss is not the *sine qua non* in an

---

**3.** When asked by Lerner to supply information regarding qualifications of the man selected to replace the Lerner Corporation, appellees apparently refused. The record indicates that the new manager was associated with defendant Gudelsky in a sand and gravel business, and as a co-executor of the estate of Harry Gudelsky, one of the original partners and part of the Gudelsky family.

action for injunctive relief for a breach of fiduciary duty. *See Eisler v. Eastern States Corporation,* 182 Md. 329, 35 A.2d 118 (1943).

■ Maryland courts have consistently held that they will be loath to interfere in the internal management decisions of a partnership or corporation unless there is a present showing of culpable negligence, waste of partnership assets, or imminent danger of loss of the property of the partnership. *See Parish v. Maryland and Virginia Milk Producers Association, Inc.,* 250 Md. 24, 242 A.2d 512 (1968), *cert. denied,* 404 U.S. 940, 92 S.Ct. 280, 30 L.Ed.2d 253 (1971); *McQuillen v. National Cash Register Co.,* 112 F.2d 877 (4th Cir., 1940); *Eisler v. Eastern States Corporation, supra,* 182 Md. at 334, 35 A.2d 118.

Lerner's bald claim that harm was imminent when his suit was filed was contradicted by his failure during the six months prior to the grant of summary judgment (including four months after the termination of Lerner Corporation's management contract) to amend his bill of complaint or to file an affidavit in which any factual evidence of actual or future harm was alleged. There was no evidence before the trial court of culpable negligence or imminent waste of partnership assets. We agree with the trial court that the relief sought by the appellant may not be based on a bald allegation of harm which *might* occur at some *indeterminate future time.*

### III.

■ The trial judge refused to grant summary judgment on the issue whether Homer Gudelsky was entitled to vote on the motion to terminate the services of the Lerner Corporation to Wheaton Plaza. The trial court had before it a number of documents executed by Homer Gudelsky individually as well as by Homer Gudelsky *or* Gudelsky Brothers, as a partnership. There were no affidavits or any testimony as to the significance of these documents, particularly in the light of the amendment to paragraph 9 of the original agreement which defined "original partners" as

those who were partners to the original agreement and their survivors in the partnership but not to include partners who succeeded to shares in the partnership as legatees or as distributees of a deceased partner. We agree with the trial judge that in the light of these circumstances the issue should not and could not be determined without a trial on the merits.

JUDGMENTS AFFIRMED, COSTS TO BE PAID 75% BY THE APPELLANT, 25% BY THE CROSS–APPELLANTS.