UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

In Re: CPC HEALTH CORPORATION,
                                    *Debtor.*

---

CPC HEALTH CORPORATION,
                                    *Plaintiff,*

and

OFFICIAL COMMITTEE OF UNSECURED
CREDITORS FOR CPC HEALTH
CORPORATION,
                        *Creditor-Appellee,*

v.

STEVEN GOLDSTEIN,
                        *Defendant-Appellant.*

No. 03-1344

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Marvin J. Garbis, District Judge.
(CA-02-1754-MJG, BK-00-20843)

Argued: October 28, 2003

Decided: December 4, 2003

Before WILKINS, Chief Judge, and WIDENER and
SHEDD, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

**COUNSEL**

**ARGUED:** Randall K. Miller, ARNOLD & PORTER, Washington, D.C., for Appellant. Mark David Taylor, ARENT, FOX, KINTNER, PLOTKIN & KAHN, P.L.L.C., Washington, D.C., for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

**OPINION**

PER CURIAM:

Dr. Steven Goldstein (Goldstein) appeals a district court order affirming a bankruptcy court order denying his motion for rejection damages against CPC Health Corporation (CPC). We affirm, although not on the ground relied on by the district court.

I.

On September 27, 1997, Goldstein, who had previously served as CPC's executive director, entered into an agreement with CPC to serve as its president and CEO. When this contract expired on October 4, 1999, the CPC board of directors ("the Board") voted to renew Goldstein's agreement for an additional year ("the 1999 Agreement"). On September 27, 2000, shortly before the 1999 Agreement was set to expire, the Board convened to discuss the possibility of filing for Chapter 11 bankruptcy. At this meeting, the Board rejected an offer by Goldstein to resign but did not address whether to extend his agreement. Nevertheless, after the 1999 Agreement expired on October 4, 2000, Goldstein continued working for CPC in the same position and for the same compensation.

CPC filed a Chapter 11 bankruptcy petition on October 11, 2000. On November 20, 2000, CPC filed its bankruptcy schedules, which Goldstein signed as CPC's president and CEO. The schedule contain-

ing listings for executory contracts did not list an employment agreement between CPC and Goldstein.

On approximately December 11, 2000, the Board voted to remove Goldstein from his position as president and CEO, but, in so doing, agreed to provide Goldstein with a severance package of ten months of salary. Goldstein subsequently performed two weeks of transition services and three weeks of consulting services for CPC.

CPC's reorganization plan provided that all executory contracts that had not been specifically rejected would be deemed rejected when the plan was confirmed, which occurred on September 7, 2001. In early October 2001, Goldstein moved for rejection damages for the bankruptcy trustee's rejection of his alleged executory employment contract. He maintained that under Maryland law he was entitled to a presumption that the 1999 Agreement was renewed for an additional year under the same terms by virtue of his continued employment after expiration of the agreement. He did not challenge the legality of his termination on December 11, 2000, but contended that he still had an executory contract on September 7, 2001 that was rejected on that date pursuant to the terms of the confirmed plan.

The bankruptcy court denied Goldstein's motion for rejection damages, ruling that Goldstein did not have an executory contract on the date of plan confirmation for two reasons. First, he became an at-will employee when his 1999 contract expired. And second, even if his contract was renewed for another full year when it expired in 2000, no executory contract existed on September 7, 2001 because by that time Goldstein had been terminated. The district court affirmed the denial of Goldstein's motion on the ground that the bankruptcy court did not clearly err in finding that Goldstein became an at-will employee when his contract expired in 2000.

II.

With certain exceptions not relevant here, a bankruptcy trustee, "subject to the court's approval, may assume or reject any executory contract . . . of the debtor." 11 U.S.C.A. § 365(a) (West 1993). In this context, "a contract is executory if performance is due to some extent on both sides." *Lubrizol Enters. v. Richmond Metal Finishers, Inc. (In*

*re Richmond Metal Finishers, Inc.)*, 756 F.2d 1043, 1045 (4th Cir. 1985). And, a trustee's rejection of a contract is tantamount to a breach and gives rise to an unsecured claim against the estate. *See* 11 U.S.C.A. § 365(g)(1) (West 1993 & Supp. 2003); 3 *Collier on Bankruptcy* ¶ 365.09[1] (Alan N. Resnick & Henry J. Sommer eds., 15th ed. 2003).

We review the decision of the district court de novo, effectively standing in its shoes to consider directly the findings of fact and conclusions of law by the bankruptcy court. *See Butler v. David Shaw, Inc.*, 72 F.3d 437, 440 (4th Cir. 1996). As such, we review legal conclusions by the bankruptcy court de novo and may overturn its factual determinations only upon a showing of clear error. *See id.* at 441. "A finding is clearly erroneous when, although there is evidence to support it, on the entire evidence the reviewing court is left with the definite and firm conviction that a mistake has been committed." *Faulconer v. Comm'r*, 748 F.2d 890, 895 (4th Cir. 1984).

A.

Goldstein first argues that the bankruptcy court clearly erred in finding that the 1999 Agreement was not renewed for another year. We agree.

Under Maryland law, which the parties agree governs this claim, when parties enter into a one-year contract and continue their performance after the term expires, the contract is presumed renewed for another year absent an affirmative showing that the parties agreed to alter the terms of the previous agreement:

> [I]f the contract for a year is made, and the parties do not disagree, and the service continues, the same contract prevails for the next year during which service has continued, without new agreement. . . . [S]uch contract is likened to the case of a tenant holding over. . . . [T]he presumption is, when the service continues, it is under the same contract. . . . Being only a presumption, it is liable to rebuttal by evidence of a change of contract.

*Brandenburg v. S. F. & G. Co.*, 114 A.2d 604, 607 (Md. 1955) (internal quotation marks omitted); *see Lerner v. Ammerman*, 467 A.2d 187, 191 (Md. Ct. Spec. App. 1983) ("The presumption of continuance could be overcome only by a contrary provision in the agreement itself or an affirmative showing that the parties intended to change the terms of the continuing agreement.").

The bankruptcy court found that the presumption of renewal for an additional year was rebutted because "the parties, at the September 27, 2000, Board meeting, intended that Dr. Goldstein operate on an at-will basis with CPC, upon expiration of the 1999 Contract." J.A. 342. In making this finding, the court reasoned that the minutes of that meeting reflect no vote on a possible extension of the contract; that CPC was in financial distress and thus unlikely to have wanted to commit itself to another full year of Goldstein's compensation; and that Goldstein signed his name to CPC's bankruptcy schedules as president and CEO of CPC under penalty of perjury and did not list his own agreement as an executory contract to which CPC was a party. The court also discounted the fact that Goldstein was awarded a severance package in the exact amount of the salary he would have been owed under the one-year contract. The court concluded that the severance package was "a means only to show CPC's appreciation for Dr. Goldstein's years of service for CPC and [was] not . . . evidence that CPC's Board of Directors had, on September 27, 2000, extended the 1999 Contract." *Id.* at 343.

Initially, we note that it appears that the bankruptcy court may have incorrectly placed the burden on Goldstein to prove that the parties agreed to another one-year term rather than placing the burden on the Official Committee of Unsecured Creditors (Appellee) to prove that the parties agreed to change the terms of the 1999 Agreement. *See id.* at 342-43 (wherein the bankruptcy court concluded that the Board's failure to discuss extending Goldstein's contract—as indicated by meeting minutes containing no reference to such discussions—tended to show that Goldstein became an at-will employee). However, we need not decide whether the bankruptcy court applied an incorrect standard, because even if it did not, it clearly erred in finding that the parties agreed to change Goldstein's status to at-will employment.

The finding of the bankruptcy court notwithstanding, there simply was no evidence on which to base a reasonable conclusion that the

parties agreed to change Goldstein's status to at-will employment or that the Board even intended to do so. Appellee points to the fact that the Board voted in 1999 to extend Goldstein's contract for an additional year and that the Board minutes reflect that no such vote was taken in 2000. But that evidence tends to show only that the subject of the terms under which Goldstein would continue to work was not addressed at the September 27, 2000 meeting, not that the parties affirmatively agreed to change the terms. Indeed, testimony from CPC's Chairman of the Board, Eric Henry, confirmed that the subject "just wasn't addressed." *Id.* at 278.

The bankruptcy court relied in part on its view that the Board would not likely have committed itself to pay Goldstein's salary for another full year considering its dire financial circumstances. This inference is completely speculative, however. And, even assuming *arguendo* that CPC's financial situation tended to show that the Board would not have taken affirmative action to extend Goldstein's contract for another year, it certainly does not show that the Board actually asked Goldstein to change his status to at-will and that Goldstein agreed to do so.

The final fact relied upon by the bankruptcy court was that Goldstein did not include his employment contract on CPC's bankruptcy schedule listing executory contracts. It is clear, and the bankruptcy court recognized, that Goldstein is not now legally bound by the disclosures. First of all, his submission of the schedule as CPC's president was simply a corporate act, not a personal act of his as an individual. *See Turner v. Turner*, 809 A.2d 18, 61 (Md. Ct. Spec. App. 2002). Moreover, he subsequently corrected the schedule when he filed his proof of claim. *See* Fed. Bankr. R. 3003(c)(4) (stating that a properly executed and filed claim supersedes a scheduling of that claim); *cf. Sovran Bank v. Anderson*, 743 F.2d 223, 225 n.1 (4th Cir. 1984) (stating that bankruptcy schedules give rise to admissions against the debtor "unless corrected" (internal quotation marks omitted)).

Appellee argues, however, that the bankruptcy court could properly have viewed Goldstein's signature as circumstantial evidence that he did not believe he had an executory employment contract with CPC. This argument is unsatisfactory for several reasons. First, Goldstein

testified that it simply never occurred to him that the schedules he filed were inconsistent with the notion that his contract had been renewed again in 2000 for one year. He testified that he did not even know what an executory contract was. And, even discounting this testimony, it would be sheer speculation to conclude that Goldstein, who is neither a lawyer nor a financial officer and who signed the schedules based on the advice of his CFO, appreciated the legal subtleties of the situation. Furthermore, even assuming that Goldstein actually believed that he was no longer under contract, that still does not demonstrate that the Board shared this view or that the parties actually entered into an agreement to change Goldstein's status to at-will employment. In sum, any inference from the schedules filed by Goldstein would have to rest on layer upon layer of speculation. For all of these reasons, the evidence here was insufficient to support a finding that CPC rebutted the presumption that Goldstein's contract was renewed in 2000 for an additional year.

## B.

We now turn to the second ground offered by the bankruptcy court for the denial of Goldstein's motion for rejection damages. As we explained earlier, the bankruptcy court concluded that regardless of whether the 1999 Agreement was renewed, there could be no executory contract after Goldstein was terminated in December 2000 because the termination eliminated any further obligation on his part to perform. Goldstein challenges this analysis only by asserting that CPC could not dispose of *its own* obligation to pay Goldstein the remainder of his salary for the year simply by unilaterally terminating the contract.* But, this assertion in no way contravenes the conclusion

---

*Goldstein contended at oral argument that the bankruptcy court did not actually decide that there could be no post-termination executory contract. In so arguing, Goldstein relied on a statement in the bankruptcy court order that the finding that the 1999 Agreement was not renewed for an additional year "dispose[d] of the court's need to address whether the contract at issue was or was not executory when CPC's chapter 11 Plan was confirmed." J.A. 341. We conclude that, despite its recognition that the at-will finding would have been sufficient to dispose of the case, the court offered its alternative basis for the denial in unmistakable terms. *See id.* at 345 (ruling that Goldstein's termination prior to the confirma-

of the bankruptcy court that CPC's termination of Goldstein ended *his* obligation to continue to perform. *See Lubrizol Enters.*, 756 F.2d at 1045 (explaining that a contract is executory when performance is due from *both* parties). Because the analysis of the bankruptcy court relating to the December 2000 termination is essentially unchallenged, we affirm the order of the district court affirming the denial of Goldstein's motion for rejection damages.

*AFFIRMED*

---

tion of the plan was "the most telling reason" for the denial of rejection damages).

Goldstein also suggested at oral argument that were we to affirm on the ground that there was no executory contract after he was terminated, he might pursue a breach of contract claim based on his firing. We take no position regarding the merits of such a claim.