# THE TRAVELERS' INSURANCE COMPANY *vs.* FRANK M. PARKER.

*Contracts—Mutuality of Obligation—Implied Renewal of Contract of Service for One Year—Presumptions—Evidence.*

An instrument by which an insurance company agrees to pay a certain commission to an agent for one year constitutes a valid contract, although the agent does not expressly agree to render the services, because in such case the intention of the parties is manifest that there should be a correlative obligation upon the part of the agent.

When a written contract provides for the rendition of services by one party for one year and similar services continue to be rendered thereafter, there is an implied renewal of the same contract.

Where an insurance company employed an agent for a year and he continued to render similar services after the expiration of the year, the question whether such subsequent services were rendered to the company under a renewal of the original contract or were rendered to the managing agent of the company under a new contract made with him is a question of fact; but since the same services were continued, the presumption is that they were rendered under the original contract, and the burden of proof is on the defendant to show that a new contract was made by the managing agent.

The evidence in this case examined and held legally sufficient to author-
ize the jury to find that services rendered by the plaintiff, to recover
compensation for which this action was brought, were rendered for the
defendant company under an implied extension of the contract for one
year made by it, and were not rendered for the manager of the defend-
ant company under a new contract made with him by the plaintiff.

An exception to a granted prayer, on the ground of a lack of evidence
legally sufficient to sustain it, will not be considered on appeal, unless
the ruling of the Court on this objection appears in the record in a bill
of exceptions signed by the trial judge.

Appeal from the Superior Court of Baltimore City (HAR-
LAN, C. J.)   The plaintiff's first prayer, which was granted by
the Court, instructed the jury that if they found that the de-
fendant hired the plaintiff as its agent for the term of one
year, commencing December 1, 1892, and that the plaintiff
entered upon said employment and performed the same ac-
cording to said contract of hire up to December 1, 1895, and
that the same services were continued to be rendered to the
defendant without any express renewals of said contract till
October 1, 1896, then the presumption is that said services
were continued under the same contract of hire, and the bur-
den of proof is upon the defendant to show a change of con-
tract ; and if the minds of the jury, after a consideration of
all the evidence, are left in a state of equipoise or balance as
to whether or not any change of contract was made, then
their verdict should be for the plaintiff.

The cause was argued before McSHERRY, C. J., FOWLER,
BRISCOE, BOYD, PEARCE, SCHMUCKER and JONES, JJ.

*William L. Marbury* (with whom was *Jesse Slingluff* on the
brief), for the appellant:

The original contract between Parker and the Travelers'
Insurance Company was not a " contract of employment "
for one year or for any definite period, and for that reason the
doctrine as to implied renewal from year to year, cannot be
made to apply to it.   It has heretofore been assumed through-
out this case that this contract was a contract of employment

within the meaning of the doctrine. On closer examination, however, it will be noted that such is really not the case. It would appear from the terms of the paper that at the time it was signed Parker had already been soliciting insurance for the Travelers' Company, but it does not appear that he had agreed to continue to render those services for any definite time. *And neither does he bind himself by this written agreement or memorandum to do so.* So far as appears from this writing, or from any evidence in the case, Parker did not agree to work for The Travelers' Insurance Company for any particular time at all, but he wanted some written memorandum of what sort of pay he was to receive for such work as he had been doing or might do in the future. That is all this agreement purports to declare.

This so-called contract never was a legally binding contract, for the reason that it was entirely one-sided and without consideration. The Travelers' Company, it is true, agrees to pay to Parker this bonus of ten per cent on all premiums which he may secure for the company over or above a certain number, and a twenty per cent commission on all insurance which he may procure, but Parker does not on his part agree to make any effort to write any special amount of insurance, or to write any at all, unless he should see fit. There is nothing requiring him to give any particular amount of his time, labor or attention to the service of The Travelers' Insurance Company; in other words, there is no consideration for the promise of the Travelers' Company to pay the bonus. There cannot be a legal contract which is binding on only one party. Not having been therefore a legally binding contract of employment for a definite time, the doctrine relied on would seem not to apply.

We do not dispute the fact that, after the period covered by that contract, Parker did continue to perform services of substantially the same character for the three subsequent years, but the point important to be noted here is that it is not conceded, and we think that there is no legally sufficient evidence to show that these latter services were rendered by him

to the *same employer*, or that he continued in the same service, so as to give rise to the presumption so much relied upon by the plaintiff. The cases in which this doctrine has been applied have been cases where there has been no questions as to the services having been rendered to the same master ; where it was conceded that the "employment continues," and the question was whether that employment should be considered an employment at will, or was a renewal of the original employment, thus extending the original contract for another like period. In the case at bar there is no concession and no such question. The very point at issue is whether the services rendered by Parker after the expiration of his original contract were rendered to The Travelers' Insurance Company or to Thomas individually. Where, as in this case, it is not admitted, but strenuously denied that he continued in the service of the company, we think it will be hard to find an authority for the proposition that because he continued to do the same kind of work the law will indulge the presumption that he was doing it for the same employer. Under such circumstances the fact that after the appointment of the State agent and the expiration of his contract with the company, (which it is fair to assume would never have been made had there been a State agent at the time), Parker continued to solicit insurance for The Travelers' Insurance Company, would not fairly give rise to the presumption that he was again employed by the company direct rather than by the State agent. If there is to be any presumption indulged in, it would seem rather the other way. *Homan* v. *The Brooklyn Life Insurance Company*, 7 Mo. 22.

It being denied that, after the expiration of his first year, Parker was working under employment from the Travelers' Company ; and it being claimed that he was working for Thomas, the State agent, individually, as other solicitors were, the burden of proof is upon him to show that he was in the service of the Travelers' Company, that is to say, that he continued to write insurance for The Travelers' Insurance Company, and, as its direct employee, and not as an employee of

the said agent, Shuff or Thomas, with the knowledge and consent of the company ; that is to say, with the knowledge and acquiescence of some officer of the company having authority to give such consent on behalf of the company. When he has established this fact, then, and not until then, will arise the presumption that the old contract was renewed. There is no evidence whatever that either Shuff or Thomas had authority from the company to give such consent or to employ Parker or anyone else for the company, or make any contract by which the company would become bound to pay said employee anything.

*Charles F. Harley* and *Louis B. Bernei* for the appellee :

The plaintiffs first prayer was properly granted. *McCullough* v. *Carpenter*, 67 Md. 55; *Wallace* v. *Floyd*, 29 Penna. State 184; *Ohlendorf* v. *Kanne*, 66 Md. 495; *Lister* v. *Pender*, 74 Md. 19; *Sines Case*, 58 Mich. 503; *Moline Plow Co.* v. *Booth*, 17 Ill. App. 574; *Buckley Case*, 48 Ill. 189.

There is ample evidence tending to prove that the same services were continued to be rendered to the defendant by the plaintiff, without any express renewals of said contract for a second and a third year. The defendant contends that these services were rendered to its State agents, although at times there were no State agents in Maryland, but the salient fact is admitted that the same compensation was paid to the plaintiff, and the same method of payment was made as during the first year. There is ample evidence tending to prove that the same services were continued by Parker, that they were rendered to the defendant without any express renewals during the period for which recovery is sought in this case. This is sufficient to make out a *prima facie* case, and raise the presumption that said services were continued from time to time under the original contract of hiring, and the Statute of Frauds does not apply to defeat it, even though the repeated renewals cover a period of more than a year. *Sines Case*, 58 Mich. 503; *Lister* v. *Pender*, 74 Md. 18; *McCullongh* v. *Carpenter*, 67 Md. 555; *Wallace* v. *Floyd*, 29 Pa. St. 184; *Vail* v.

*Jersey Little Falls Mfg. Co.*, 32 Barb. 564; *Moline Plow Co. v. Booth*, 17 Ill. App. 576; *Buckley Case*, 48 Ill. 189. Such presumption may of course be rebutted by evidence of a change of contract, but that is a question for the jury.

PEARCE, J., delivered the opinion of the Court:

The appellee sued the appellant in *assumpsit* to recover for services rendered to it, and the judgment being in his favor, this appeal has been taken from the rulings of the Court in excluding certain evidence offered by the defendant, and in granting two prayers of the plaintiff, and rejecting the defendant's only prayer. The exception relating to the exclusion of evidence, having been abandoned at the argument, will not therefore be considered.

The declaration contains the common money counts, and also a special count based upon the following written memorandum between the parties :

" *Baltimore, Md.*, January 18, 1893.

"Memorandum of commission to be paid to F. M. Parker, account of Accident Insurance of Railway Postal Clerks.

"Upon all regular accident premiums and renewals secured by Mr. Parker between December 1, 1892, and December 1, 1893, and for which he pays the cash to The Travelers' Insurance Co., or its authorized agents, he is to receive the following commissions, viz.: On less than 100 premiums or renewals, 20 per cent.

" For 100 premiums or renewals, 30 per cent, or 10 per cent bonus.

" For 200 premiums or renewals, 35 per cent, or 15 per cent bonus.

" On annuity premiums, 25 per cent and no more.

" He is to receive the regular 20 per cent when each premium is paid in full, and the additional bonus (if due him), at the expiration of the year, viz.: December 1, 1893.

(Signed) FRANK M. PARKER, Solicitor.

(Signed) J. F. BEARD, Cashier."

The execution of this agreement was admitted, and it was

agreed that the services sued for were all performed between December 1, 1895, and October 1, 1896. It was further admitted that the plaintiff did, during the time covered by this suit, $6,480 worth of business, and that the defendant, if liable at all, is liable for the sum of $648, with interest, in the discretion of the jury from June 1, 1897.

The plaintiff does not claim that there was any other *express* contract between the defendant and himself than that above set forth, but he alleges that he continued in the service of the defendant uninterruptedly from December 1, 1892, to October 1, 1896, without any change of contract, and that by implication of law the original contract has been extended, or renewed, from year to year, so as to cover the period between December 1, 1895, and October 1, 1896, all services rendered prior to December 1, 1895, having been paid for in full.

The defendant's first contention is that the memorandum never was a legally binding contract, for the reason that it was entirely one-sided and without consideration ; secondly, that even if a binding contract, it was terminated December 1, 1893, and a new contract was entered into between the plaintiff and John L. Shuff, the general agent of the defendant company in Maryland, under the terms of which the services were rendered to Shuff personally, until November, 1895, and after that date to Frank H. Thomas, who then succeeded Shuff in the agency ; and thirdly, that if this substituted contract be not established by the evidence, that there was no legally sufficient evidence to entitle the jury to find that the parties to the original contract agreed to extend it over the period from December 1, 1895, to October 1, 1896.

On the first point the appellant's argument is that Parker did not bind himself to render services for a year, or for any definite time, nor did he even agree to write any special amount of insurance, or to write any at all, unless he should choose to do so, and that no obligation of any sort is thereby imposed on him. But this position is not tenable. A very similar contract was before this Court in *Jaffray* v. *King*, 34 Md. 220, where the services of King were engaged as a sales-

man for a definite period at $350 per month, the contract being made through a letter from Jaffray & Co. to King, saying : " Dear Sir. We hereby engage your services as salesman from this date, February 19th, till June 30th, next, inclusive, at the rate of $350 per month. Your particular field will be the city of Baltimore, and you are at liberty to solicit all such dealers there as we do not already sell to." King was subsequently dismissed from this employment on the alleged ground that his employers had ascertained he had been attending to the business of another house. In a suit by King to recover damages for this alleged wrongful dismissal, it was held, though King had signed no contract, and there was nothing in the letter mentioned expressly creating or defining any obligation on his part, that he was not bound to give them his whole time, but that he was bound to serve them in good faith and to the extent of his ability, and that if doing this did not require his whole time and entire services, he could occupy the remainder of his time in any other pursuit he saw fit, provided it was not inconsistent with his contract with them, and did not impair the value of his services to them as salesman of their goods in the Baltimore market. That case is stronger than the one before us, because there the compensation was a large fixed sum, while here it is dependent upon the amount of insurance written. If the purpose of the company had been to monopolize the whole time and services of Parker so as to ensure the largest volume of business they would command, the contract could, and doubtless would, have been so drawn.

And in *Black* v. *Woodrow & Richardson*, 39 Md. 215, JUDGE ALVEY said : " It not infrequently occurs that contracts, on their face and by their express terms, *appear* to be obligatory on one party only, but in such cases if it is manifest that it was the intention of the parties, and the consideration upon which one party assumed an express obligation, that there should be a corresponding and correlative obligation on the other party, such corresponding and correlative obligation will be implied." Upon this sound principle of construc-

tion, we think Parker was clearly under an implied obligation to serve the insurance company in good faith within the limitations laid down in *Jaffray* v. *King*, and that the contract is not lacking in the requisite mutuality of consideration and obligation.

The principle upon which the plaintiff's claim is founded has been recognized in this State in *McCullough Iron Co.* v. *Carpenter*, 67 Md. 584, and in *Lister Ag. Works* v. *Pender*, 74 Md. 15. In those cases, the rule laid down by BEST, C. J., in *Beeston* v. *Collyer*, 4 Bingham, 309, was adopted, viz., " that if a contract for a year is made, and the parties do not disagree, and the service continues, the same contract prevails for the next year during which service has continued, without a new agreement." Mr. Wood, in his work on *Master and Servant*, sec. 96, says this is the law of this country, as well as of England, and the Courts of a number of the States have so declared, among which are New York, Pennsylvania, Illinois, Michigan and California. We do not understand the appellant to dispute the law announced in the cases relied on by the appellee, but, he says, that in all these cases, the fact that the plaintiff continued in the employ of the defendant, after the expiration of the period covered by the original contract, was conceded, the only question being whether thereafter the employment was at will, or was a renewal of the original employment for a like period, whereas, here he contends that the very point at issue is whether, after the expiration of the original contract, the services rendered by Parker were rendered to the company or to its agents, Shuff and Thomas, successively, in their respective individual capacities, and this constitutes his second point.

Now, whether the original contract with the company was renewed, or whether it was abandoned and new contracts were successively made with Shuff and Thomas, are questions exclusively of fact, in reference to which there is a conflict of testimony. The plaintiff's first prayer, granted by the Court, requires the jury to find the hiring for one year and the performance by the plaintiff of that contract, and that the same

services were continued to be rendered by the plaintiff *to the company* without any express renewal of the contract until October 1, 1896.   The jury could not find that these services were rendered to the company if the evidence satisfied them that new contracts were made by the plaintiff under which the services were rendered to Shuff and Thomas; and under this prayer, the jury necessarily considered all the testimony tending to show the making of new contracts, and in rendering their verdict for the plaintiff they decided the question of a new contract adversely to the defendant's contention.   If the defendant had seen fit to do so, it could have submitted a prayer to the effect that if the jury found the original contract was not renewed after December 1, 1893, but that new contracts were entered into with Shuff and Thomas for rendering *to them* the same services previously rendered to *the company*, then the plaintiff could not recover, and if such prayer had been rejected it could have brought its exception here.  But we think the plaintiff's first prayer covered everything to which the defendant could have entitled itself by any prayer framed to meet this point.   The instruction of that prayer that the burden of proof is upon the defendant to show a change of contract—the services continuing to be rendered defendant —was correct.   The continuance of the same services to the defendant raises the presumption that they were continued under the original contract.   This presumption is, of course, disputable, but where a disputable presumption of law exists in favor of one person who substantially asserts the affirmative, the burden of proof upon that point is shifted from him to his opponent, for if no evidence were given on either side the former must succeed by virtue of this presumtion.  *Reynolds on Evidence*, sec. *74*; *Taylor on Evidence*, sec. 367–70.

Thirdly, the appellant contends that there is no evidence legally sufficient to entitle the jury to find that the parties to the contract ever agreed to extend it over the period from December 1, 1895, to October 1, 1896.

It is very true that there is no express agreement to this effect, but there is, we think, an abundance of evidence in

the record to require the submission of the case to the jury as was done. The jury must determine the credibility of testimony, and if the evidence offered by the plaintiff is such, that if believed by the jury, they may lawfully find for the plaintiff, the case cannot be withdrawn from their consideration, although the plaintiff's evidence is contradicted in material particulars by that of the defendant. *West. Md. R. R. Co.* v. *Kehoe,* 86 Md. 43.

Without attempting to review the testimony in detail, the following particulars may be mentioned. Parker himself states that at the expiration of the first year he entered upon the second year of service with the *same company* without any change in the terms of the contract; and so at the expiration of the second year, and of the third year, that he went right on continuously with *them* under the original contract year after year, and that the *company knew* he was working under the original contract. It is conceded by the appellant that the 10 per cent bonus for these three years was paid to Parker by the company, as it contends by way of gratuity to protect him against loss by reason of Shuff's inability to pay him, but Parker swears he never heard any claim that it was a gratuity until after February 21, 1896, when he had been for three months upon the period covered by this suit, and that the only reason ever given until after February 21, 1896, for failure to settle sooner the commissions for 1895 was that Thomas would not send to the Home Office the amount of his business for that year. A very important and significant piece of evidence is the letter of the actuary of the company dated February 21, 1896, to Parker, inclosing a check for $828.85—" to pay bonus on accident premiums written from December 1, 1894 to December 1, 1895," and requesting " return of receipted voucher," but without a word to show that the payment was a gratuity instead of the discharge of an obligation for the past, or of warning that the same relation would not continue in the future.

Beard, the cashier, who made the original contract on behalf of the company, when asked how long Parker continued

in the service of the company under that contract, replied, " until about November, 1896, when I left." On cross-examination he said, " I never knew of any arrangement, only this arrangement—I always *understood* the same remained, I have no knowledge." He does not say he " supposed" or " believed" it remained, but that he so *understood*, though he did not say he knew it as a fact. If it be contended that this is mere hearsay, still, not having been excepted to in the Court below, it must be considered by this Court and must be allowed its full force. *Gibbs* v. *Gale*, 7 Md. 76; *Mahoney* v. *Mackubin*, 54 Md. 274; *Hopper* v. *Smyser*, 90 Md. 385. Under a prayer, such as the defendant offered in this case, it is no answer to say that all this is contradicted and overborne by the defendant's evidence. If the plaintiff's evidence be tangible, however slight or weak, the jury must pass upon its sufficiency in fact. It follows from what we have said there was no error in granting the plaintiff's first prayer nor in rejecting the defendant's prayer.

No reference was made by the appellant, either in his brief or in argument, to the plaintiff's fourth prayer by which the jury were instructed that they were not to consider the result of a formal trial of the case. The record does not disclose what was the result of that trial, but whether it resulted in a judgment of *non pros*, or whether a new trial was granted after verdict rendered, the instruction was so clearly correct, that it may be approved without the production of any authority.

The special exception to the plaintiff's first prayer for want of evidence legally sufficient to sustain it is not before us. Such an exception can only be brought before the Court by procuring a ruling thereon in the lower Court, and this objection and the ruling thereon must appear in the record by exceptions signed by the trial judge. *Gunther* v. *Dranbauer*, 86 Md. 11. This has not been done here, but if it had been we should not hesitate to sustain the instruction for the reasons already stated. The judgment appealed from must therefore be affirmed.

*Judgment affirmed with costs above and below.*

(Decided November 16, 1900.)