David LABRECQUE & Terry
Vandgrifft, Plaintiffs,

v.

SUNBIRD BOAT CO., INC., Defendants.

Nos. L–92–1809, L–92–1810.

United States District Court,
D. Maryland.

Dec. 21, 1994.

Leo Howard Lubow, Baltimore, MD, for plaintiffs.

Miriam L. Fisher, Mark C. Hansen, Robert E. Donick and Johnson and Gibbs, Washington, DC, and Robert S. Romano, of Waukegan, IL, for defendants.

## MEMORANDUM

LEGG, District Judge.

In these consolidated breach of contract actions arising under 28 U.S.C. § 1332 (diversity of citizenship), the Court is called upon to decide defendant's motion for summary judgment. This is a case involving an alleged oral contract entered into between plaintiffs, David Labrecque and Terry Vandgrifft, and Victor Roof, the former President of Sunbird. The parties do not disagree as to the fundamental material facts concerning these oral representations. They do, however, disagree as to the legal consequences flowing from them. For the reasons set forth below, the Court hereby GRANTS defendant's motion for summary judgment.

## I. STATEMENT OF FACTS

The essential facts can be briefly stated. Labrecque and Vandgrifft are luxury boat salesmen. Although both are plaintiffs in this action, they are sole proprietors.[1] Defendant Sunbird is a South Carolina corporation which utilizes sales representatives to sell various models of boats to authorized dealers throughout the United States. Prior to January 1987, Sunbird was owned and controlled by its founder, Victor Roof.[2]

In December, 1985, Roof approached Labrecque and Vandgrifft at the Orlando Boat Show to enlist them as sales representatives for Sunbird.[3] Both Labrecque and Vandgrifft expressed an interest and subsequently travelled to the office of Sunbird located in Columbia, South Carolina to meet with Roof and tour the Sunbird plant.[4] After touring the plant, the parties reached an oral agreement.[5] While the terms of the agreement were sketchy and did not cover many terms one would normally find in a sales representative agreement, the men nonetheless agreed on territory, exclusivity, commission rates, and the duration of the agreement.

Vandgrifft and Labrecque were each given exclusive territories, meaning that no other salesperson would compete against them in their territories. Vandgrifft was retained as the exclusive sales representative for Virginia, West Virginia, Pennsylvania, western Maryland, upstate New York, and Vermont.[6] Labrecque was retained for eastern Maryland, New Jersey, metropolitan New York, Connecticut, Rhode Island, Delaware, Massachusetts, New Hampshire and Maine.[7] Collectively, Labrecque and Vandgrifft were expected to sell 300 boats by the end of the Sunbird model year,[8] at a commission of 3%.[9]

1. Labrecque Depo. at 95; Vandgrifft Depo. at 18.

2. Roof Depo. at 18–19.

3. Labrecque Depo. at 77.

4. Labrecque Depo. at 92; Vandgrifft Depo. at 96.

5. Labrecque Depo. at 99–106.

6. Second Amended Complaint at 3.

7. *Id.*

8. The Sunbird model year ran from July 1st to June 30th each year. Roof Depo. at 31.

9. Vandgrifft Depo. at 67, 97, 103, 123; Roof Depo. at 30.

It is clear that Labrecque and Vandgrifft were independent contractors rather than employees.[10] At least at the beginning of their relationship, Labrecque and Vandgrifft were free to sell boats from other boat manufacturers.[11] Similarly, Sunbird was free to sell its boats through other agents in other parts of the country.

At the meeting in South Carolina, Roof informed Labrecque and Vandgrifft that so long as all parties were satisfied at the end of the model year, the parties would have the option to continue their relationship for the next model year, commencing on July 1, 1986 and ending on June 30, 1987 (the end of the model year).[12] All three men contemplated that this arrangement was in the nature of a "trial marriage" which, if successful could be renewed with the agreement of all concerned.

At the annual sales meetings in 1986, 1987, 1988, 1989, 1990, and 1991, Roof expressly[13] told plaintiffs that they were rehired for the upcoming model year, commencing July 1 and ending June 30.[14] As a practical matter, Labrecque and Vandgrifft were anxious for the contract renewals, and therefore, the decision to continue the relationship was for Roof to make.[15] Neither of the plaintiffs suggest, however, that Roof had the contractual ability to require Labrecque and Vandgrifft to function as sales representatives for

the upcoming year absent their assent to do so. Instead, plaintiffs were free to terminate the relationship at the end of the model year.[16]

In January 1987, Outboard Marine Corporation ("Outboard") purchased Sunbird from Roof. After selling the company, Roof stayed on as President pursuant to a five year written employment contract with Outboard. This contract expired on February 1, 1992.[17]

Plaintiffs were aware that Roof's contract was about to expire and were concerned about how Roof's departure would affect their relationship with Sunbird.[18] During the annual sales meeting in 1991, Roof assured all the sales representatives present, including Labrecque and Vandgrifft, that his departure would not impact their positions for the coming year.[19]

Still concerned that their arrangement was in jeopardy because of the company's change in management, plaintiffs spoke with Roof again in September 1991 at the Chicago Boat Show.[20] Roof reaffirmed that there was no threat to their jobs for the remaining model year (ending in June 1992).[21] At that time, plaintiffs also told Roof that they had an offer from Armada Manufacturing Co. effec-

---

10. In the briefs on both sides, the parties utilize the terminology of employees at will. Maryland courts have defined an independent contractor as "one who contracts to perform a certain work for another according to his own means and methods, free from control of his employer in all details connected with the performance of the work except as to its product or result." *Kelly v. Eclipse Motor Line*, 305 F.Supp. 191, 196 (D.Md. 1969). *aff'd*, 432 F.2d 1009 (4th Cir.1970) (quoting *Snider v. Gaultney*, 218 Md. 332, 336, 146 A.2d 869 (1958)). Labrecque and Vandgrifft, set their own hours, incurred their own expenses, and exercised control of their day to day operations.

11. Vandgrifft Depo. at 28; Roof Depo. at 32.

12. Labrecque Depo. at 118. Although the parties use the term "option" in their papers, it is clear, for the reasons stated *infra*, that the oral agreement cannot be properly characterized as an option contract.

13. Labrecque Depo. at 136; Vandgrifft Depo. at 110–11.

14. There seems to be some confusion as to the exact date in which the annual sales meetings were held. The parties agree that it occurred sometime in late May or early June each year. Labrecque Depo. at 143–144.

15. Vandgrifft Depo. at 105.

16. Vandgrifft Depo. at 98; Roof Depo. at 35. In fact, Roof testified that the plaintiffs were free to leave during the model year if they chose to but he did not feel that Sunbird could terminate them without just cause. Roof Depo. at 35.

17. Roof Depo. at 21–22.

18. Labrecque Depo. at 143, 149.

19. Labrecque Depo. at 143 *et seq.*

20. Labrecque Depo. at 144–6; Vandgrifft Depo. at 115.

21. Labrecque Depo. at 163–4; Vandgrifft Depo. at 114–5; Roof Depo. at 44.

tive immediately.[22] They told Roof that if Sunbird objected they would decline the offer provided that Sunbird would honor their exclusive sales agreement until the end of the current model year (June 1992).[23] Roof specifically told them that the relationship would not be terminated until the end of the model year. While he did not say that they would be terminated if they accepted Armada's offer, Roof told them it would not be "good" for them.[24] Labrecque and Vandgrifft declined Armada's offer.[25] In November of 1991, Roof informed plaintiffs that he had spoken with his successor, David Fagerquist, who confirmed that the status quo would be maintained until the end of the model year (June 1992).[26]

Roof retired from Sunbird in November 1991. Upon Roof's departure, the new management of Sunbird decided to replace Sunbird's then extant sales force. Labrecque and Vandgrifft were terminated effective December 31, 1991. In the "first half" of January of 1992, they commenced work for Armada.[27]

Plaintiffs initially filed suit in the Circuit Court for Baltimore City, and the suit was removed to this Court. Plaintiffs filed an amended complaint, asserting the following counts: (i) breach of contract formed in December 1985 (ii) promissory estoppel (iii) breach of contract formed in September 1991. The defendants have moved for summary judgment.

## II. DISCUSSION

### A. Standards for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that

the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). That is, Rule 56 mandates the entry of summary judgment against a party who, after reasonable time for discovery and upon motion, "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.*

The moving party bears the burden of demonstrating the absence of any genuine issue of material fact. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Charbonnages de France v. Smith,* 597 F.2d 406, 414 (4th Cir.1979). The Court must view the facts, and all reasonable inferences to be drawn from them, in the light most favorable to the non-moving party. *Pulliam Inv. Co. v. Cameo Properties,* 810 F.2d 1282, 1286 (4th Cir. 1987); *Ross v. Communications Satellite Corp.,* 759 F.2d 355 (4th Cir.1985). If the evidence favoring the non-moving plaintiff is "merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986) (citations omitted). Unsupported speculation is insufficient to defeat a motion for summary judgment. *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987) (citing *Ash v. United Parcel Service, Inc.,* 800 F.2d 409, 411–12 (4th Cir. 1986)). Moreover, the mere existence of some factual dispute is insufficient to defeat a motion for summary judgment; there must be a genuine issue of material fact. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2509–10.

■ Material factual disputes are "genuine" only if a reasonable jury could return a

---

22. "Armada" and "Marada" are used interchangeably throughout the briefs and depositions. Labrecque Depo. at 182.

23. Vandgrifft Depo. at 115.

24. Vandgrifft Depo. at 115. In his deposition, Labrecque testified that he represented other boat manufacturers at the beginning of his tenure with Sunbird. Once Outboard purchased

Sunbird, however, the sales representatives "knew" that Outboard wanted 100% of their effort. Labrecque Depo. at 65–66, 114, 167.

25. Labrecque Depo. at 182.

26. Roof Depo. at 67; Vandgrifft Depo. at 89, 116; Labrecque Depo. at 177.

27. Vandgrifft Depo. at 32–34.

verdict for the non-moving party based upon the record as a whole. *Id.* at 248–49, 106 S.Ct. at 2510. "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Id.* at 252, 106 S.Ct. at 2512. With these principles in mind, the Court will address the parties' arguments.

### B. Count 1—Breach of December 1985 Agreement

■ Plaintiffs allege that their termination in December 1991 constituted a breach of their oral agreement with Sunbird. Md Code Art. 39C, § 1(3) bars the enforcement of oral contracts that cannot be completed within one year, by any possibility. *Sun Cab v. Carmody*, 257 Md. 345, 263 A.2d 1 (1970); *Adams v. Wilson*, 264 Md. 1, 284 A.2d 434 (1971). The issue centers around whether the contract could have been performed within a year.

Plaintiffs advance several arguments to escape the applicability of the Statute of Frauds. All of these arguments fail.

First, they contend that the renewals of their contracts at each annual sales meeting were merely extensions of the original contract, not offensive to the Statute of Frauds.[28] The cases [29] cited by plaintiffs for this proposition are inapposite.

These cases involve situations in which the parties have contracted for a definite period of time, and then continued their relationship after that period **without any express statements or agreements**. Without any express statements continuing the relationship or terminating it, courts have construed the lack of expression to mean that the parties intended to continue under the old contract. In this case, however, plaintiffs have admitted that Roof **expressly** stated that the plaintiffs were rehired for the next year.[30] The plaintiffs had the option of not going forward with a new contract for the upcoming year. These circumstances combined to form a new agreement for the new model year.

Second, to support their claim that the enforcement of the contract is not barred by the Statute of Frauds, the plaintiffs improperly recast their agreement as an option contract.[31] An option contract has been defined as "a unilateral contract whereby the optionor, for a valuable consideration, grants the optionee a right to make a contact or purchase but does not bind the optionee to do so; the optionor is bound during the life of the option, but the optionee is not." 1 Samuel Williston, *Williston on Contracts*, § 61A at 199 (3d ed. 1992) ("Williston") (citations omitted). There is no dispute that both parties had the option to terminate the relationship at the end of the model year.[32] The parties do not suggest that Sunbird could have compelled performance by Labrecque and Vandgrifft for the following year. Because both parties were at liberty to terminate the relationship or go forward, it seems unescapably clear that at the time that Roof told the plaintiffs they could represent Sunbird for another year and plaintiffs assented, a new contract was formed. *See Owen v. Staib*, 307 S.W.2d 758 (Ky.1957) (contract where one party has option to renew subject to written consent of other party is a nudum pactum).

The arrangement between the parties is properly analyzed as a series of oral agreements. These new contracts must be analyzed to see whether they are in fact barred

---

28. The original contract was formed in December 1985 and continued until June 1986 (7 months).

29. *E.G. Brandenburg v. S.F. & G. Co.*, 207 Md. 413, 114 A.2d 604 (1955); *Smith v. Central Soya of Athens, Inc.*, 604 F.Supp. 518, 528 (E.D.N.C. 1985); *Travelers Insurance Company v. Parker*, 92 Md. 22, 47 A. 1042 (1900).

30. The contracts did not renew automatically.

31. They rely on 2 Arthur Corbin, *Corbin on Contracts*, § 450 (1960) which states that some courts have held that one year contracts with the option to renew are outside of the Statute of Frauds because the option may never be exercised. The passage quoted by plaintiffs, however, is preceded by the express statement that these contracts involve an "option in 'one party' for a renewal or an extension." 2 Arthur Corbin, *Corbin on Contracts*, § 450 at 565 (1960) (emphasis added).

32. Vandgrifft Depo. at 98.

by the Statute of Frauds or whether an action for breach of contract would lie for Labrecque's and Vandgrifft's termination without cause.[33] Since the alleged breach occurred in December of 1991, the Court need only examine the agreement for the 1991–1992 model year.

The issue is whether the agreement for the 1991–92 model year was capable of being performed within one year. Maryland Code Art. 39C, § 1(3); *Griffith v. One Investment Plaza Associates,* 62 Md.App. 1, 488 A.2d 182 (1985) ("Statute of Frauds will bar a claim . . . when it is impossible by the terms of the contract for it to be performed fully within one year."); *Collection and Investigation Bureau of Maryland, Inc. v. Linsley, et al.,* 375 A.2d 47, 51, 375 A.2d 47 (Md.App.1977).

For the purposes of Art. 39C, § 1(3), the time period is calculated from the time at which the contract was made. "A contract to serve for a period extending more than a year beyond the time of making the contract is uniformly held within the statute." 3 Williston § 495 at 585 (citations omitted).[34] Plaintiffs own testimony reveals that Sunbird renewed their agreements in May or June of 1991 (at the annual sales meeting) for the model year beginning July 1, 1991. The contract, therefore, could not be performed within a year of its making and its enforcement is barred by the Statute of Frauds. *Compare Grossman v. Levy's,* 81 So.2d 752 (Fla.1955) (renewal by both parties of original contract which may have been offensive to Statute of Frauds on day second year of performance commenced was not barred by Statute of Frauds).

■ Next, plaintiffs contend that Roof's affidavit admitting the existence of an agreement between plaintiffs and Sunbird satisfies the Statute of Frauds requirement. A contract otherwise falling under the Statute of Frauds may nevertheless be enforceable when there is an admission by the opposing party that the contract was indeed formed.

*Adams v. Wilson,* 264 Md. 1, 284 A.2d 434 (1971). *Trossbach v. Trossbach,* 185 Md. 47, 42 A.2d 905 (1945); *Litzenberg v. Litzenberg,* 307 Md. 408, 415, 514 A.2d 476 (1986). Such admissions may also be made by a current agent of the party. *Barranco v. Barranco,* 91 Md.App. 415, 420, 604 A.2d 931 (1992). Roof, however, was not an agent at the time in which he signed the affidavit in May of 1992. *Litzenberg,* 307 Md. at 418–420, 514 A.2d 476.

Because the contract was not capable of being performed within one year and no present agent of Sunbird has attested to the existence of such a contract, the enforcement of the contract is barred by the Statute of Frauds. Summary judgment on count one, therefore, is appropriate.

### C. Promissory Estoppel

In count two, the plaintiffs claim, in the alternative, that the defendants are estopped from contesting the validity of the contract. They contend that they reasonably and detrimentally relied on Roof's promise in September 1991 that they would remain Sunbird's exclusive sales representatives at least through June 30, 1992, and consequently, rejected an offer with Armada during the fall of 1991.

■ In order to state a claim for promissory estoppel, plaintiffs must allege that: (i) a fraudulent promise was made with respect to a future event; (ii) the defendant anticipated that plaintiff would rely on the promise; (iii) plaintiffs reasonably relied on the promise; and (iv) plaintiffs suffered actual damages as a result of their reliance on the promises made to them. *Vogel v. Independence Federal Savings Bank,* 728 F.Supp. 1210, 1232 (D.Md.1990).

■ The theory of promissory estoppel, however, can not be used to overcome the Statute of Frauds defense when the detriment results solely from defendant's failure

---

**33.** Sunbird does not contend that Labrecque and Vandgrifft were terminated because they breached their obligations to Sunbird.

**34.** Thus, a contract entered into on May 1 for performance on May 1–April 30 of the following year would not be barred by the Statute of

Frauds. A contract entered into on April 15 to perform between May 1–April 30 would be barred because performance of the contract would exceed a year from the making of the contract.

952

to perform under the oral agreement. *Lance J. Marchiafava, Inc. v. Haft*, 777 F.2d 942, 945 (4th Cir.1985); *Commonwealth Film Processing, Inc. v. Courtaulds United States, Inc.*, 717 F.Supp. 1157 (W.D.Va.1989) (citations omitted) (applying federal law); *Evans v. Fluor Distribution Companies*, 799 F.2d 364, 367 (7th Cir.1986) ("promissory estoppel is not a viable exception to the Statute of Frauds"); *N.W. Cole v. Sage Systems*, No. Har. 85–1028, 1986 WL 14674 (D.Md. Dec. 22, 1986). Although plaintiffs claim that are not utilizing the doctrine of promissory estoppel to enforce the oral agreement barred by the Statute of Frauds, that is the effect of their argument.

■ Roof's reassurance to plaintiffs in September was merely a reiteration of the existence of the parties' agreement. It was not a new promise. No modification of the agreement was made, nor did the parties evince an intent to create a new agreement. Instead, the parties had a pre-existing agreement that governed the terms and conditions of their relationship. Labrecque and Vandgrifft's rejection of Armada's offer, therefore, was premised on their oral agreement with Sunbird for the model year of July 1, 1991—June 30, 1992.

■ Moreover, even if the doctrine of promissory estoppel could be utilized to enforce Roof's reassurance, plaintiffs' claim fails to satisfy the requisite elements of promissory estoppel. When Labrecque and Vandgrifft sought reassurance from Roof, they knew that his departure was imminent. In fact, they were concerned about their job security precisely because Roof was being replaced. In addition, they were aware that Outboard never or rarely employed independent sales representatives.[35] Instead of asking Roof's successor about the security of their jobs, Vandgrifft and Labrecque sought the advice of a friend whose tenure was ending. When asked whether plaintiffs should take Armada's offer, Roof merely said

it "wouldn't be good" for them.[36] Such unmemorialized statements, made by an outgoing officer, cannot provide a sufficient basis for reasonable reliance.[37] *See RCM Supply Co. v. Hunter Douglas, Inc.*, 686 F.2d 1074, 1078 (4th Cir.1982). Moreover, because plaintiffs commenced work for Armada in early January 1992 (following their termination with Sunbird on December 31, 1991), it is unlikely that the plaintiffs could demonstrate any actual damages, much less the $50,000 required for federal jurisdiction.

### D. *Count III—Enforcement of Contract Entered into on September 1991*

■ As an alternative claim, plaintiffs argue that Roof's reaffirmation in September 1991 created a separate enforceable oral contract, the term of which was less than one year. There are two issues arising under Count III.

First, defendants contend that plaintiffs should not be allowed to amend their complaint to include Count III. On June 9, 1993, however, the Court granted the plaintiffs' motion to amend the complaint, which was not opposed within the time required under the rules. Consequently, the defense's argument is moot. Moreover, courts have taken a very liberal attitude toward motions to amend, allowing the amendment of pleadings "when justice so requires." *See Davis v. Piper Aircraft Corp.*, 615 F.2d 606 (4th Cir. 1980), *cert. dismissed*, 448 U.S. 911, 101 S.Ct. 25, 65 L.Ed.2d 1141 (1980); *Tiller v. Atlantic Coast Line Railroad*, 323 U.S. 574, 65 S.Ct. 421, 89 L.Ed. 465 (1945).

Second, Sunbird alleges that the reaffirmation in September 1991 cannot constitute a separate enforceable oral contract because the intent to create a new contract was not present. Believing they already had a binding contract, plaintiffs assert that the parties could not have intended to create a new one. The Court agrees.

---

**35.** Labrecque Depo. at 157.

**36.** Vandgrifft recalls Roof saying, "as a friend, I am telling you, that would not be good for you right now." Vandgrifft Depo. at 115.

**37.** Moreover, Vandgrifft merely recalls that Roof told them **"at this particular point** there was no threat" to their continued employment for the model year. Vandgrifft Depo. at 114. (emphasis added).

The case of *Allen v. Williams Motor Sales Co.*, 277 Mass. 295, 179 N.E. 159 (1931) is instructive. In *Allen,* the Court held that the assurances from the President of Williams Motor Sales Co. that he would pay Allen the agreed upon salary did not create a new contract, removing the old contract from the Statute of Frauds. The Court weighed heavily the absence of express statements to enter into a new contract. Instead it found that the assurances did not "amount to any more than a repetition of promises on behalf of defendant to pay plaintiff for services which, by virtue of a previous oral agreement, he was bound to perform." *Id.* at 298, 179 N.E. 159. The fact that this previous agreement was unenforceable due to the Statute of Frauds was of no moment. *Id.; See also* 3 Williston § 503 at 622.

Similarly, Roof's assurances to plaintiffs that they would not be terminated before the end of the model year did not create a new enforceable contract. The parties neither indicated that they wished to extinguish their prior agreement or that they desired to create a new contract. Moreover, there was no additional consideration that might support a new contract. For these reasons, summary judgment is granted as to count three.

### III. *CONCLUSION*

For the reasons stated above, the Court shall GRANT defendant's motion for summary judgment.