The STROH BREWERY COMPANY

v.

ALLEGANY BEER DISTRIBUTORS,
et al.

Civil No. L–95–2211.

United States District Court,
D. Maryland.

Oct. 15, 1996.

J. Hardin Marion, Thomas M. Wilson, III, Tydings & Rosenberg, Baltimore, MD, for Plaintiff.

Stephen C. Wilkinson, Cumberland, MD, for Defendants.

## MEMORANDUM

LEGG, District Judge.

On July 28, 1995, Stroh Brewery Company ("Stroh") filed this declaratory judgment action against a former distributor, Allegany Beer Distributors, Inc. ("Allegany"). In Count I, Stroh seeks a declaration that Allegany's distributorship has terminated. In Count II, the manufacturer seeks a declaration that Allegany, the terminated distributor, has no rights under the Maryland Beer Franchise Fair Dealing Act ("Franchise Act"). Md.Ann.Code Art. 2B, § 17–101(b)(1)(i)(1994). Allegany answered Stroh's Complaint but has not asserted any claims of its own.

Stroh's suit also named as a defendant Western Maryland Distributing Company, Inc. ("Western Maryland"). Western Maryland purchased Allegany's assets and contends that it should have been approved by Stroh as Allegany's successor. Western Maryland counterclaimed against Stroh and made a third-party claim against Frederick P. Winner, Ltd. ("Winner").[1] Winner is Stroh's new distributor in Allegany County.

Before the Court are four motions:

(1) Stroh's Motion for Partial Summary Judgment on Counts I and II of its Complaint;

(2) Stroh's Motion for Partial Summary Judgment on Counts I, II, III, VIII, IX and X of Western Maryland's Counterclaim;

(3) Winner's Motion to Dismiss Counts IV, V, VI and VII of Western Maryland's Third–Party Complaint; and

(4) Western Maryland's Motion to Amend Count I of its Counterclaim.[2]

## I. STATEMENT OF FACTS

In June 1993, Stroh signed a distributorship agreement ("Wholesaler Agreement") giving Allegany the exclusive right to distribute Stroh brands in Allegany County, Maryland. The Wholesaler Agreement includes several provisions pertinent to this case:

The Agreement is not assignable in whole or in part by Allegany without the "prior

---

1. Western Maryland's claims against Stroh and Winner are asserted in a single document titled Countercomplaint and Third–Party Complaint. This has created some confusion in keeping straight Western Maryland's claims against Stroh, against Winner, or against both.

2. The pleadings assert other counts that are not decided by this Memorandum and Order. The Court will set a conference with counsel to schedule discovery and briefing of the remaining claims.

written consent" of Stroh. (Wholesaler Agreement §. 22.)

The Agreement specifies the manner in which Stroh's consent to an assignment is to be requested.[3] (*Id.* at § 5(F).)

The Agreement requires Stroh's prior written consent for any significant "Control Change" affecting Allegany. Such a change includes a sale or transfer of Allegany's business or assets. (*Id.* at § 5(C).)

The Agreement specifies the procedures for Allegany to obtain consent. (*Id.* at Ex. 3.)

The Agreement provides that it "shall immediately and automatically terminate upon the occurrence of a[n unauthorized] Control Change." (*Id.* at § 5(D).)

Allegany could terminate the Agreement, but only by first providing ninety days' written notice. (*Id.* at § 10.)

On June 9, 1995, Allegany notified Stroh that it intended to sell its assets, including the right to distribute Stroh brands, to Western Maryland. At Allegany's request, Stroh began the internal process of determining whether to consent to the proposed Control Change. On July 14, 1995, Allegany and Western Maryland closed on the sale by signing the "Acquisition Agreement." At that time, Western Maryland had not read the Wholesaler Agreement and did not know that Stroh's written consent was required. As of July 14, some Stroh employees had made informal remarks indicating that the prospects for consent were favorable. Stroh, however, had not finished evaluating the transaction and had not given written approval.[4]

On July 18, 1995, Stroh filed the instant action seeking a declaration that its responsibilities to Allegany and Western Maryland

under the contract and the Franchise Act have ended.

In its Counterclaim and Third–Party Complaint, Western Maryland asserts a variety of claims against Stroh and Winner. Western Maryland contends that Stroh unreasonably withheld consent to the Control Change, that Stroh made fraudulent and negligent misrepresentations, and that Stroh violated the Franchise Act, as well as federal and state antitrust laws. Western Maryland contends that Winner, a much larger distributor, violated federal and state antitrust laws and maliciously interfered with its contract with Stroh.[5]

For the reasons stated herein, the Court concludes that Western Maryland's claims are untenable. Accordingly, the Court, by separate Order, will (i) GRANT Stroh's Motion for Partial Summary Judgment on its Complaint; (ii) GRANT Stroh's Motion for Partial Summary Judgment on Western Maryland's Counterclaim; (iii) DENY Winner's Motion to Dismiss Western Maryland's Third–Party Complaint; and DENY Western Maryland's Motion to Amend Count I of its counterclaim.

## II. SUMMARY JUDGMENT STANDARD

### A. Legal Standard

Summary judgment shall be granted when the pleadings, depositions, and answers to interrogatories demonstrate that there is no genuine issue of material fact, and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *World–Wide Rights Ltd. Partnership v. Combe, Inc.*, 955 F.2d 242, 244 (4th Cir.1992).

■■■ The meaning of a contract is an issue of fact to be decided by the fact finder. If the language is unambiguous, or if any

---

3. This includes the following criteria considered by Stroh: Competitive factors in the market generally, the experience, knowledge, ability, resources, dedication, and proposed operating strategies and plans of the wholesaler organization, including its management and ownership. (Wholesaler Agreement § 5(F)(ii).) .

4. Ultimately, Stroh decided against Western Maryland and signed a distribution agreement with Winner. Under the agreement, Winner became Stroh's exclusive distributor in Allegany County.

(Ans. Countercl. at ¶ 21; Ans. Third–Party Compl. at ¶ 8.)

5. Western Maryland's counterclaim asserts antitrust and other claims. By Order of October 24, 1995, this Court stayed discovery on the antitrust counterclaims pending resolution of the other issues in the case. Accordingly, the antitrust counterclaims, as well as Stroh's trademark infringement claims, remain unadjudicated.

ambiguity may be resolved based on undisputed extrinsic evidence, the Court (rather than a jury) is authorized to interpret the contract. *Id.* at 245 (citation omitted); *see also Goodman v. Resolution Trust Corp.,* 7 F.3d 1123, 1126 (4th Cir.1993).

### B. Allegany's Failure to Respond

Allegany did not oppose Stroh's Motion for Summary Judgment on Counts I and II of the Complaint. Under Fed.R.Civ.P. 56(e), "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party."

### III. CONTRACTUAL CLAIMS

Count I of Stroh's Complaint and Counts I, II, and III of Western Maryland's Counterclaim address the same issues. Raising claims of breach of contract, promissory estoppel, and misrepresentation, Western Maryland contends that Stroh must recognize it as Allegany's successor, with the right to distribute Stroh products. Stroh contends that Western Maryland enjoys no rights under any recognized principle of contract or tort law. Accordingly, this section of the Memorandum will address these issues.

### A. Breach of Contract Claims

The Stroh Wholesaler Agreement expressly states that prior written approval is required for any Control Change affecting Allegany and that an unsanctioned change automatically terminates the contract. (Wholesaler Agreement at §§ 5, 22.) This agreement also grants Stroh the right to "disapprove any proposed Control Change which Stroh in good faith believes to be adverse to the overall business interests of Stroh in Wholesaler's Territory." (*Id.* at § 5(F)(ii).) Stroh, therefore, had discretion (to be exercised in good faith) regarding approval of Allegany's transfer.[6] The Wholesaler Agreement sets out a list, albeit a nonexclusive one, of criteria that Stroh

would consider in determining whether to grant approval. *Id.*

Western Maryland argues that Stroh breached the terms of the Wholesaler Agreement by withholding approval, that Western Maryland met each of the criteria listed in the agreement, and that Stroh's refusal to sanction the Control Change was motivated by bad faith. (Countercl. at ¶ 23–4.)

Under Maryland law, Western Maryland lacks standing to assert this breach-of-contract claim. A contract cannot be enforced by a non-party unless that person is an intended third-party beneficiary. *Bolick v. Board of Educ. Of Charles County,* 256 Md. 180, 260 A.2d 31 (1969). Assignees of a franchise are not considered intended beneficiaries and may not sue the franchisor for noncompliance. *Blair v. General Motors Corp.,* 838 F.Supp. 1196 (W.D.Ky.1993); *Noller v. GMC Truck & Coach Div.,* 244 Kan. 612, 772 P.2d 271, 274–75 (1989). Because Western Maryland is neither a party to the Stroh Wholesaler Agreement nor an intended beneficiary, its contract claims are not viable.[7]

### B. Quasi–Contractual/Tort Claims

Western Maryland next contends that, in closing on July 14, it relied on 14 remarks made by Stroh employees indicating that approval was likely. (Opp. Mot. Summ. J. Countercl. at 9–13.) These remarks are casual statements by Stroh employees indicating that Stroh and Western Maryland would be working together in the future. (Countercl. at ¶ 31.) Stroh requested financial information from Western Maryland, and preliminarily discussed credit terms. (Mot. Summ. J. Countercl. at 17–19.) One employee even said that there didn't appear to be any problems. (Opp. Mot. Summ. J. Countercl. at 10.)

Based upon these statements, Western Maryland advances three theories why Stroh should be estopped from denying approval of

---

6. Of the two other manufacturers with which Allegany had contracts, one (Heileman) approved the transfer to Western Maryland and the other (Genesee) did not. (Mot.Summ.J.Countercl. at 4 n. 1.)

7. Allegany, which is a party, did not oppose Stroh's Motion for Summary Judgment. Allegany does not contend that it has a legal right to assert such a claim in Allegany's name.

744

the transfer. These are: (1) promissory estoppel; (2) fraudulent misrepresentation; and (3) negligent misrepresentation. None of these theories is viable.

■ Promissory estoppel requires the following elements: (1) that a fraudulent promise relating to a future event was made; (2) that defendant anticipated plaintiff would rely; (3) that plaintiff reasonably relied; and (4) that plaintiff suffered actual harm as a result. *Labrecque v. Sunbird Boat Co., Inc.,* 873 F.Supp. 946 (D.Md.1994).

■ Fraudulent misrepresentation requires five elements: (1) that a false representation was made; (2) that defendant knew it was false or acted with reckless disregard to its truth; (3) that the statement was made for the purpose of defrauding plaintiff; (4) that plaintiff had a right to rely; and (5) that plaintiff suffered directly, causing injury. *Gross v. Sussex Inc.,* 332 Md. 247, 257, 630 A.2d 1156 (1993).

■ Negligent misrepresentation does not require a showing of actual or constructive knowledge of the statement's falsity, but does require the additional element of a duty between plaintiff and defendant. *Gross,* 332 Md. at 259, 630 A.2d 1156.

### 1. No Reasonable Reliance

■ Each of these theories of recovery would require reasonable reliance by Western Maryland. No fair-minded jury could find Western Maryland's reliance to be reasonable.

● The Wholesaler Agreement clearly stated that Stroh's approval must be in writing. Reliance on oral statements, in the face of this clear requirement, was unreasonable.

● Western Maryland has not shown that any of these statements were made by Stroh personnel clothed with the actual or apparent authority to approve the transfer.

● None of the 14 statements are direct promises or representations that Stroh would grant its approval. At most, they are informal indications that things 'look good.' No reasonable person would close a significant deal based upon such casual remarks.

● Western Maryland is hard-pressed to contend that it relied upon any criteria mentioned in the Stroh Wholesaler Agreement because it never actually read the document prior to closing. (Dep. Allegany, Ex. 3 at 132–33, 136–39; Dep. Western Maryland, Ex. 4 at 39–40).

● Western Maryland and Allegany were aware of Stroh's approval rights. The Acquisition Agreement provided that the closing date could be delayed if approval had not yet been received. (Acquisition Agreement at 3–9.) Despite this, Western Maryland and Allegany closed without approval. According to testimony, they were reluctant to wait because Western Maryland wanted to take advantage of the lucrative summer beer consumption months. (Opp. Mot. Summ. J. Countercl. at 9.)

The evidence is clear that Western Maryland took a calculated business risk that approval would be forthcoming. Stroh never represented, by word or by deed, that approval was a foregone conclusion.[8]

### 2. No Misrepresentation

■ Western Maryland has produced no evidence to demonstrate that the 14 statements were untrue when made or reflected false intentions.[9] (Mot. Summ. J. Countercl. at 16.) The record contains no evidence from which a jury could infer that Stroh was lulling Western Maryland or Allegany into an unsanctioned closing so that Stroh would be relieved of Allegany as a distributor. As far

8. Western Maryland and Allegany failed even to take the precaution of advising Stroh of the anticipated closing date and pressing for a decision with sufficient time for Stroh to complete an evaluation. (Mot. Summ. J. Countercl. at 13 n. 5.)

9. Negligent misrepresentation differs from fraud because the plaintiff is not required to show actual or constructive knowledge of a statement's falsity. Negligent misrepresentation does, however, include an additional element of duty between the plaintiff and the speaker. *Gross,* 332 Md. at 259, 630 A.2d 1156. Western Maryland cannot prove such a duty because (a) it has suffered only economic loss, and (b) it was not in contractual privity with Stroh. *Jacques v. First Nat'l Bank,* 307 Md. 527, 537, 515 A.2d 756 (1986); *Flow Industries, Inc. v. Fields Constr.,* 683 F.Supp. 527, 529 (D.Md.1988).

as Stroh was concerned, the Allegany/Western Maryland closing would not occur until after Stroh had made a formal, corporate decision. There is no evidence to the contrary.

For all these reasons, no fair-minded jury could find Stroh liable under theories of breach of contract, promissory estoppel, fraud, or negligent misrepresentation. Judgment shall be entered in favor of Stroh on Count I of its Complaint and on Counts I through III of Western Maryland's Counterclaim.

### 3. Malicious Interference Claim

■ In Count VIII of its Counterclaim, Western Maryland alleges that Stroh maliciously interfered with a contract (the Acquisition Agreement) between Allegany and Western Maryland. In Maryland, this tort requires both (1) existence of a contract between plaintiff and a third party; and (2) wrongful conduct by defendant that either induces an actual breach or makes its performance more expensive. *Macklin v. Robert Logan Associates,* 334 Md. 287, 297, 639 A.2d 112 (1994).

■ Western Maryland cannot prevail on this theory because it cannot show that Stroh's refusal to approve the Control Change was wrongful. As stated above, Allegany's distributorship automatically terminated on July 14, 1995, while the Control Change was under consideration by Stroh. Stroh had done nothing to wrongfully induce Allegany and Western Maryland to close prematurely. After July 14, Stroh was not contractually obligated to consider the proposed Control Change any further. Stroh's ultimate decision to withhold approval may have frustrated Western Maryland's expectations, but Stroh, having acted with legal justification, cannot be liable in tort.

Because no fair-minded jury could conclude that Stroh acted wrongfully, judgment as a matter of law shall be entered for Stroh on Count VIII of the Counterclaim.[10]

### IV. FRANCHISE ACT

In Count II of the Complaint, Stroh seeks a declaration that it did not violate the Franchise Act. In Counts IX and X of its Counterclaim, Western Maryland alleges that Stroh conspired to drive it out of business in violation of the Act. This section shall address these three related counts.

■ Generally speaking, the Franchise Act protects beer distributors against arbitrary acts by beer manufacturers, such as termination without adequate notice. Md. Ann.Code Art. 2B, §§ 17–103 & 17–104 (1994). As Stroh's franchisee under the Wholesaler Agreement, Allegany was entitled to certain protections. *Id.* Allegany, however, despite repeated notice, did not oppose Stroh's Motion for Summary Judgment. Accordingly, pursuant to Rule 56(e) of the Federal Rules of Civil Procedure,[11] summary judgment shall be entered against Allegany on Count II of the Complaint.

■ Western Maryland does not qualify as a franchisee of Stroh, because it is not a party to a franchise agreement with Stroh and has not been offered or granted a franchise. *Id.* at § 17–101(b)(2). Accordingly, Western Maryland lacks standing to sue Stroh under the Franchise Act.

Even if Western Maryland had standing under the Franchise Act, its claim would fail for the following reasons:

■ (a) Allegany, not Stroh, was responsible for terminating the Stroh Wholesaler Agreement by effecting a Control Change without Stroh's approval. Thus Stroh was not required to meet the statutory termination procedures of §§ 17–103 and 17–104;

(b) Stroh did not establish a dual distributorship in violation of § 17–105 because it never had a franchise agreement with Western Maryland;

(c) Stroh was not required to fill Western Maryland's orders under § 17–102(3), as no

---

**10.** Additionally, in the absence of a showing of malice, Western Maryland would not be entitled to punitive damages. *Owens–Illinois v. Zenobia,* 325 Md. 420, 454–60, 601 A.2d 633 (1992).

**11.** "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e).

agreement existed between the two companies; and

(d) The Franchise Act does not require Stroh to transfer franchise rights to Western Maryland under the Franchise Act, because no provision of the Franchise Act addresses transfer rights or standards for transfer.

Given the undisputed facts, no reasonable jury could hold for Western Maryland, and, therefore, judgment shall be entered in favor of Stroh and against Western Maryland on Count II of the Complaint and Counts IX and X of the Counterclaim.

## V. MOTION TO AMEND

Western Maryland has not formally moved to amend its Counterclaim. On page 21 of its Memorandum in Opposition to Stroh's Motion for Summary Judgment, however, Western Maryland conceded that it lacked standing to enforce the Wholesaler Agreement. Western Maryland suggested that it wishes to amend its Counterclaim to add a new but unspecified theory of recovery. Western Maryland has not described or even labelled its "new" theory.

The Court will treat this statement as a Motion to Amend and will deny it. Western Maryland has not laid out any theory under which it could recover. Indeed, Western Maryland's Counterclaim asserts every apparent theory of recovery arising under the common law or by statute. In any event, the Court entered a scheduling Order and the time for Western Maryland to amend its Countercomplaint has long passed.

## VI. ANTITRUST CLAIMS

Counts I, II, III, VIII, IX and X of Western Maryland's Counterclaim and Third–Party Complaint did not name Winner as a defendant. The counts involve Winner only to the extent of seeking ancillary injunctive relief to enforce Allegany's asserted rights to an exclusive Stroh distributorship in Allegany County. Thus, the entry of judgment on Counts I, II, III, VIII, IX and X eliminates Western Maryland's claims for relief against Winner.

Winner remains a defendant in Counts IV, V, VI, VII and XI of the Third–Party Complaint. Winner has moved to dismiss the antitrust counts (IV–VII). Winner did not move to dismiss Count XI, in which Western Maryland contends that Winner is selling "Dos Equis" beer within Western Maryland's exclusive territory. This claim is unrelated to the Wholesaler Agreement because Dos Equis is not manufactured by Stroh.

The Court will deny Winner's Motion to Dismiss with regard to the antitrust counts. As stated in the Court's Order of October 24, 1995, the antitrust counts were stayed pending discovery on the contract and tort claims. Winner may amend and refile the Motion as a Motion for Summary Judgment following discovery.

## VII. CONCLUSION

For the reasons stated above, this Court, by separate Order, shall hereby GRANT Stroh's Motion for Partial Judgment on its Complaint on Counts I and II; GRANT Stroh's Motion for Summary Judgment on Western Maryland's Counterclaim as to Counts I, II, III, VIII, IX and X; DENY Winner's Motion to Dismiss Counts IV, V, VI, and VII of Western Maryland's Third–Party Complaint; and DENY Western Maryland's Motion to Amend Count I of its Complaint.